Argued January 25, reversed and remanded March 6, rehearing denied March 27, 1917.

## ULBRAND v. BENNETT.*

(163 Pac. 445.)

**Principal and Agent—Powers of Attorney—Construction.**

1. A power of attorney "to settle my claim for damages against" certain persons does not authorize the agent to disburse money for the principal, and if the agent does so, the principal can recover as for money had and received.

> [As to construction of powers of attorney and whether limited to property then owned by the principal, see note in 35 Am. St. Rep. 593.]

**Principal and Agent—Powers of Attorney—Construction.**

2. The receipt of money by one to the use of another does not of itself empower the former to apply the money on a debt due him from the latter.

**Money Received—Actions—Instructions.**

3. Where money was received by one defendant for the use of plaintiff, another defendant, who participated in the use of a portion of such money, was liable for the improper disposition of that portion only.

---

*On implied powers under power of attorney to transact business, see note in 4 L. R. A. (N. S.) 843.          REPORTER.

**Physicians and Surgeons—Duty of Physicians.**

4. Any transaction between a physician and patient inuring to the advantage of the former will be carefully scrutinized, and stricter control over it will be exercised than were there no confidential relation.

**Physicians and Surgeons—Duty of Physicians.**

5. A physician is not a guardian for his patient, and if he merely had knowledge of the action of a third person against whom the patient seeks relief without participating in such action, he is not liable equally with such third person.

**Principal and Agent—Powers of Attorney—Construction.**

6. Where plaintiff set up a power of attorney to settle his claim, and alleged that the agent had exceeded the power, it was valid in so far as its terms went, and the plaintiff could not repudiate it, and at the same time claim the moneys received by the defendant under it.

From Multnomah: WILLIAM N. GATENS, Judge.

This is an action by D. B. Ulbrand against J. E. Bennett and Alan Welch Smith, in which plaintiff recovered judgment and Alan Welch Smith alone appeals.

REVERSED AND REMANDED.

Department 1.    Statement by MR. JUSTICE BURNETT.

The complaint alleges in substance that the defendants agreed with the plaintiff about March 30, 1914, that they would receive from the Louis A. Hicks Company money due by that concern to the plaintiff here, safely keep the same and pay it to him on his demand. Then follows this averment:

"That on or about the 30th day of March, 1914, the said Louis A. Hicks Company, through its officers and agents, did pay over to said defendants and each of them, the full sum of $3,300.00, which payment was made for and to the use and benefit of said D. B. Ulbrand, the creditor of said Louis A. Hicks Company, as hereinbefore set out, and in accordance with the agreement made by the said defendants to hold and safely keep the said money to and for the use of said D. B. Ulbrand, in the said sum of $3,300.00 as aforesaid."

It is stated that the plaintiff demanded from the defendants and each of them the sum of $3,300 of which they have paid only $2,100, leaving due a balance of $1,200.

The answer interposed by the defendant Smith consisted of denials alone. The other defendant traverses everything in the complaint except the corporate character of the Hicks Company and the marital relation between the plaintiff and his wife. Affirmatively he alleges that Ulbrand received an injury while in the employment of the Hicks Company and

"that on the 26th day of March, 1914, said plaintiff made, executed and delivered to the defendant herein, a written power of attorney, giving and granting unto defendant full power and authority to settle, for and on behalf of plaintiff, with the said Louis A. Hicks Company a claim against said company for damages held by plaintiff, and from the amount received to settle and pay all bills contracted by plaintiff on account of his said injuries, and to retain therefrom a reasonable compensation, for himself."

He goes on to say in substance that with the personal approval of plaintiff the claim was settled for $3,300; that acting under the power of attorney the defendant Bennett for and on behalf of plaintiff paid out sundry bills as follows: To the defendant Smith for medical services, $500; The Pernot Laboratories, $10.00; Good Samaritan Hospital, $161.15; and to the plaintiff $2,100, totaling $2,771.15, and with the consent of plaintiff retained the balance of $528.85 for his own services in making the settlement.

The reply denies the execution of any power of attorney and especially one for the purpose of paying bills contracted by the plaintiff, or to retain any compensation for the defendant Bennett. It also denies on information and belief that any payments were made

by Bennett out of the money he collected, and admits the receipt of $2,100. It states in substance that by reason of his sickness and the administration of opiates to him by the defendant Smith, as his physician, he was unable to transact business and did not know the nature or quality of any act he did in reference to the signing of any instrument; that whatever the document the execution of which was obtained, it was procured by the overreaching of plaintiff by the defendants, and that every act and thing done by the defendant Bennett with regard to plaintiff's claim was done without his knowledge or consent. The trial resulted in a verdict and judgment against both the defendants for the sum of $1,200. The defendant Smith alone appealed.                    REVERSED AND REMANDED.

For appellant there was a brief and an oral argument by *Mr. Frank S. Grant.*

For respondent there was a brief and an oral argument by *Mr. Wilson T. Hume.*

MR. JUSTICE BURNETT delivered the opinion of the court.

The testimony discloses substantially the following state of facts: While in the employ of the Hicks Company the plaintiff was severely injured and taken to the Good Samaritan Hospital in Portland. The physician who first undertook the case was not securing satisfactory results. Bennett had known Ulbrand for many years, had employed him in various building projects and they were on friendly terms. He visited the injured man at the hospital, took considerable interest in his condition and volunteered his services in undertaking to collect damages from the Hicks Com-

pany as compensation for the injury.  He also advised
a change of treatment and urged that an X-ray photo-
graph be taken of Ulbrand's injured hip.  For several
years the plaintiff had also known the defendant Smith,
who is a physician and surgeon.  With the approval
of Ulbrand, his son Lester requested Smith to visit
his father professionally and the result was that he
did so and later took charge of the case and treated
the plaintiff through several months.  Smith is the
son-in-law of Bennett and they lived together.  After
some negotiations the defendant Bennett succeeded in
getting the casualty company which insured the Hicks
Company to agree to pay $2,800 and to this the Hicks
Company added $500, making a total of $3,300 gross
to be paid as damages.  On March 26, 1914, Bennett
took from Ulbrand a power of attorney constituting
the former his true and lawful attorney "to settle my
claim for damages against Louis A. Hicks and the
Employers' Liability Company."  The casualty com-
pany was an eastern concern and the papers in settle-
ment of the case came into Bennett's hands in the
form of (1) a check of the Hicks Company payable
to the order of Ulbrand for $500; and (2) a voucher
in Ulbrand's favor and against the insurance company
for $2,800, with his release attached.  Bennett assum-
ing to act for Ulbrand under the power of attorney al-
ready noted indorsed the $500 check in Ulbrand's
name, cashed it and pocketed the proceeds.  He then
went to his codefendant, suggested that he himself had
·no bank account, that Ulbrand wanted his money at
once, and requested Smith to take the voucher, deposit
it to the credit of his own bank account, retain $500
for himself, and draw checks in payment of the hospital
bill amounting to $161.15, and in favor of Ulbrand for
$2,100.  It seems also that Smith drew a check in favor

of the laboratory people for $10, and after retaining $500 for himself checked out the remainder to Bennett.

1. We remember that Bennett bases his justification in disbursing the money solely upon the written power of attorney. The language of that document only authorizes him to settle the claim for damages, but nothing further. It does not empower him to disburse any money on account of Ulbrand. We note also that the only defense interposed by Smith was a denial of the allegations of the complaint. Under such precedents as *Waite* v. *Willis,* 42 Or. 288 (70 Pac. 1034); *Keene* v. *Eldriedge,* 47 Or. 179 (82 Pac. 803); *Wagener* v. *United States Nat. Bk.,* 63 Or. 299 (127 Pac. 778, 42 L. R. A. (N. S.) 1135; and *Service Lbr. Co.* v. *Sumpter Val. R. Co.,* 67 Or. 63 (135 Pac. 539), there is enough in the complaint to sustain an action for money had and received. In the last-named case the rule is stated thus:

"In an action for money had and received, it is sufficient to show that by any process which was treated by the parties as a money transaction, the defendant has received money or its equivalent, which in equity and in good conscience belongs to and should be paid to the plaintiff; and this is true although the plaintiff may never have had actual manual custody of the specie in question."

2. There is no evidence that the defendants collaborated together in any way in cashing the $500 check. That was accomplished by the action of Bennett without any aid or assistance or advice from the defendant Smith so far as the record before us discloses. On the other hand, the fact that at the instance of Bennett the defendant Smith took into his possession the voucher drawn in favor of Ulbrand and disposed of the proceeds partly in his own interest and partly for the benefit of third parties giving a portion only to

Ulbrand is evidence that the two defendants collaborated in this disposition of funds belonging to the plaintiff. The two acted together in realizing upon the voucher to the extent of $2,800 of which Ulbrand has received only $2,100. Smith's only defense is a flat denial that he had or received any money to the use or benefit of Ulbrand. He does not plead any excuse or justification for disbursing the money as he did. The receipt of money by one to the use of another does not of itself empower the former to pay even his own debt. It may be that if he does retain an amount sufficient to satisfy his own claim against the true owner of the money and the latter sues to recover it he may in a proper case interpose his own demand as a counterclaim against the plaintiff's action; but no such situation is present in this case. It is plain, however, that he cannot adjudicate his own claim or that of another and bind Ulbrand without pleading some right or authority to do so.

3. It remains to be seen whether the jury were properly instructed in the matter. Complaint is made by Smith of the following instruction:

"If you find from the evidence that the defendant, Smith, received the thirty-three hundred dollars received in settlement of the claim of D. B. Ulbrand, for damages and appropriated the sum of $500 without the knowledge or consent of plaintiff, and without there being any agreement or understanding on the part of plaintiff, to the appropriation of said sum, with knowledge of said facts on his part, then such appropriation was wrongful, and your verdict must be in favor of plaintiff and against defendant Smith, if he had full knowledge of those facts."

This instruction is faulty in that it does not limit Smith's liability to the repayment of the money or representative thereof in the handling of which he par-

ticipated, there being no evidence that he had anything to do with more than the $2,800 included in the voucher.

Again he excepts to this instruction:

"A physician occupies towards and with his patient, a confidential and intimate trust relation and the law requires in all dealings between them the utmost fairness on the part of the physician; the transaction and position and condition of the patient must have been such as to warrant the inference that he had exercised deliberate judgment and had not been imposed upon or influenced to act in such a way as he would not have acted had he had the free use and exercise of his deliberate judgment; if the patient is weak mentally and physically and the law subjects contracts made by him to strict examination and requires scrutiny into its fairness and the fact that the contract was made under circumstances indicating undue influence or improper advantage gives rise to a presumption of fraud and the burden rests upon a physician claiming the benefit of a transaction had with a patient mentally and physically weak, to show the fairness of the transaction and that the patient understood its nature, and if the conveyance or writing appears unfair or there are suspicious circumstances surrounding it tending to show that the patient had been taken advantage of, it will be set aside and if the physician had knowledge or reason to believe that another is using or taking advantage of his confidential relation with the patient to commit a fraud upon the patient or to use undue influence over the patient or take an unfair advantage of him in procuring him to sign a writing or contract or consent to a transaction without full and free use of his deliberate judgment or full understanding of the nature of the instrument or transaction and stands by and acquiesces in the acts and doings of the third party without taking steps to advise or protect his patient, he becomes a party to the defraudulent transaction and is equally responsible with the third party and cannot claim any benefit for himself from such instrument or transaction, and in this case if you find from the evidence that the defendant, Bennett, exercised undue in-

fluence or took an unfair advantage of plaintiff, D. B. Ulbrand, by reason of the confidential relation existing between defendant Smith, and said Ulbrand and over-reached him and procured the signature under circumstances making the transaction a fraud upon Ulbrand, as I have instructed you and you find from the evidence that defendant Smith stood by, consented to or acquiesced in the acts of Bennett without advising Ulbrand or taking steps to protect him from the fraud, then I charge you that defendant Smith is equally responsible with the defendant, and the whole transaction should be set aside and neither defendant should be permitted to claim or retain any advantage by reason thereof."

4, 5. It is undoubtedly the rule that any transaction between a physician and patient inuring to the advantage of the former will be carefully scrutinized and stricter control over it will be exercised than in cases where no such confidential relation exists between the parties. The precept, however, does not go so far as to constitute a medical man a guardian for his patient and it is not enough to say that he merely had knowledge of the action of a third party against whom the patient seeks relief without showing also that the physician participated in such action. In this respect the instruction last quoted exceeds the proper limits and was erroneous to the hurt of Smith.

6. It is not perceived how in this action the plaintiff can repudiate the power of attorney in the form in which it appears in the record and at the same time charge the defendants with the money collected by virtue thereof. He is entitled to construe it according to its terms which do not empower the defendants or either of them to expend moneys on his account. As we understand the charge the trial court, whose duty it is to construe writings, properly instructed the jury

that the instrument in question gave Bennett authority to collect money but not to disburse it.

The power of attorney stands for what it is worth, namely, the right to settle the claim. So far as this action is concerned the plaintiff is bound by that settlement with the Hicks Company and its insurer because he relies upon it for the purpose of tracing the money into the hands of the defendants. The defendant Bennett, indeed, averred Ulbrand's sanction to him not only to collect the money but also to disburse it, and as meeting the latter feature the plaintiff was entitled to attack the alleged instrument on the ground that he was enfeebled by sickness, as alleged in his reply, to such an extent as to be unable to understand or comprehend the execution of the instrument. But so far as the case is concerned thus far, the power of attorney justifies the very act upon which the plaintiff counts in charging the defendants with having received the money. Other errors are alleged but it is deemed unnecessary to consider them, but for the mistakes of instruction mentioned, the judgment is reversed and the cause remanded for further proceedings.                REVERSED AND REMANDED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE HARRIS and MR. JUSTICE McCAMANT concur.