MATTINGLY et ux. v. SISLER.

No. 32253.  Nov. 19, 1946.

Rehearing Denied Jan. 7, 1947.

*175 P. 2d 796.*

F. E. Riddle and R. R. Linker, both of Tulsa, for plaintiff in error.

Frank Hickman, of Tulsa, for defendant in error.

PER CURIAM. This is an action brought by T. J. Mattingly and Mrs. T. J. Mattingly against Dr. Wade Sisler to cancel certain deeds and other instruments and to quite title to lots 7 and 8 in block 17, Sunrise Second addition to Sand Springs, Oklahoma.

Plaintiffs alleged that they were induced to execute the deeds and other instruments by false and fraudulent representations made by defendant.

Defendant answered denying that he made the representations as alleged in plaintiff's petition and pleaded that he was managing and operating a hospital; that plaintiff Mr. Mattingly was brought to the hospital for treatment and that the deeds and other instruments were executed by plaintiffs to secure the payment of the hospital bills, and by way of cross-petition alleged that plaintiffs executed several notes aggregating $1,689.40 for such bills and prayed judgment for such amount together with interest and attorney fees; that the judgment be declared a lien on the premises and that the premises be ordered sold to satisfy such judgment and lien.

Plaintiffs in their reply admitted that they signed the instruments mentioned and pleaded in defendant's answer and cross-petition, but alleged that in each instance they were induced to sign such instruments by reason of the false and fraudulent representations as alleged and pleaded in their petition. They further alleged that defendant charged an exorbitant price for his services; that he fraudulently exaggerated Mr. Mattingly's injuries in order to justify such exorbitant charge and alleged that $300 would have been a reasonable hospital charge for the services rendered. Plaintiffs prayed that defendant take nothing by way of his cross-petition and that they have judgment as in their original petition prayed for, and requested the court to submit to the jury the issues of fact as to the question of fraud.

The court in response to this request impaneled a jury and submitted to it several interrogatories on the issue of fraud. Interrogatory No. 1 is as follows:

"Do you find from a preponderance of the evidence that the defendant and cross-petitioner Sisler procured by fraud as defined in these instructions the execution of the deed dated March 7, 1939? Answer No."

A like interrogatory was submitted as to the execution of each of the other instruments here involved, and in each instance the jury answered "no" and also returned a general verdict finding the issues in favor of defendant.

Plaintiffs then presented their motion to the court for judgment in their favor notwithstanding the verdict which motion was by the court denied and judgment was entered denying plaintiffs any relief and judgment rendered in favor of defendant for the amount claimed in his cross-petition, decreed the same to be a lien against the premises and ordered a sale thereof to satisfy such judgment and lien.

Plaintiffs have appealed and assign as error the ruling of the court denying their motion for judgment notwithstanding the verdict. The question to be determined under this assignment is as to whether the judgment is clearly against the weight of the evidence.

This is a case of equitable cognizance. In such case where the trial is to a jury the verdict is advisory only and it is the duty of the court to make its own determination of the issues of fact and law, and in such case a reviewing

court on appeal will weigh the evidence but will not reverse the judgment on the facts unless it is clearly against the weight thereof. Maynard v. Hustead, 185 Okla. 20, 90 P. 2d.30; White v. Morrow. 187 Okla. 72, 100 P. 2d 872.

In order to determine the question raised by this assignment it becomes necessary to analyze and weigh the evidence. The evidence shows that plaintiff, Mr. Mattingly, sustained injuries as alleged in plaintiffs' petition; that he was brought to the Mercy Hospital and Surgical Institute for treatment; that such institution is an incorporated concern and is operated and managed by defendant, Dr. Sisler; that he was brought to the hospital in an unconscious condition and remained in such condition for a period of five days; that his injuries consisted of fractured bones of the left leg, crushed heel and ankle, several broken ribs, compression fracture of the spine and injuries to his head; that he was in a very critical condition and remained in the hospital for a period of five months.

Mrs. Mattingly testified that in about a week after her husband entered the hospital, defendant spoke to her relative to Mr. Mattingly's ability to pay a hospital bill. He stated that the bill would be between $1,200 and $1,500. She informed him that they had no money with which to pay and owned no property except their homestead. The defendant then suggested that Mr. Mattingly would undoubtedly receive compensation for his injuries from the Sand Springs Home and that arrangements should be made to pay the hospital bills out of the money so received, to which suggestion she agreed. She was later informed by the defendant that upon investigation he had ascertained that it was extremely doubtful whether Mr. Mattingly would ever be able to recover compensation and requested that she procure her son to secure the hospital bill. This she refused to do, but stated that rather than request her son to secure the bill she would be willing to give up her home;

that several days thereafter defendant prepared certain papers and presented them to her and Mr. Mattingly for signature; that he represented to them that the papers were merely instruments authorizing the payment of hospital bills out of any money Mr. Mattingly might receive from the Sand Springs Home; that relying on such representations they signed the instruments without reading them; that they both had a highschool education but they simply neglected to read the papers; that nothing was done by defendant to conceal the contents of the instruments from them; that they afterwards ascertained that the instruments consisted of a warranty deed conveying title of the premises to the defendant and a contract acknowledging that the deed was executed in full and complete settlement and payment of hospital bills; that several months thereafter additional instruments were presented by defendant to them for signature; that defendant obtained their signature to the same under the same representations as above mentioned; that after signing such instruments they ascertained that such instruments consisted of a second deed to the premises and a contract reciting that the deed was executed merely as security for the payment of hospital bills and that upon payment of such hospital bills the premises would be redeeded to them. Mrs. Mattingly further testified that within several weeks after the execution of these latter instruments defendant called upon them for the abstract to the premises; that she voluntarily delivered to him such abstract; that he still retains the same and that no request has ever been made for its return. Mr. Mattingly corroborated the testimony of Mrs. Mattingly insofar as her testimony related to the representations made by defendant at the time the various instruments were executed. Both Mr. and Mrs. Mattingly in their testimony admitted that they signed their names to the notes pleaded in defendant's cross-petition. There were four in number, one for $62.50, dated April 29, 1939; one for $45 dated May

12, 1939; one for $829.75, dated June 16, 1939; and one for $752.15, also dated June 16, 1939. Plaintiffs, however, testified that when they signed these instruments they did not know that they were promissory notes; that they were induced to sign the same under the same representations made at the time they signed the several deeds and contracts. Both plaintiffs testified that Mr. Mattingly was well cared for at the hospital and that his treatment was successful. Mr. Mattingly testified that he finally compromised his claim with the Sand Springs Home for $300 and that he expressed a willingness to defendant to pay such amount on the hospital bill but that defendant made no reply and that nothing whatever has been paid on the bill and that he still owed the full amount of the hospital bill.

Defendant in his evidence denied that he made the representations testified to by plaintiffs in order to obtain execution of the instruments; that the deeds and contracts involved were read to plaintiffs by him before they were signed; that plaintiffs knew the contents thereof; that several months after the first deed and contract were executed Mrs. Mattingly called upon him and stated that she and her husband had concluded that they did not wish to give up their home in full settlement of the hospital bill and requested that the original contract be changed so as to permit them to retain the premises upon payment of the bill; that he agreed to such change, drew a new deed and contract so reciting and that both plaintiffs voluntarily signed such instruments; that within a short time after execution of the second deed and contract he called at plaintiff's home for the abstract to the premises and that Mrs. Mattingly voluntarily delivered the same to him and he has ever since kept possession thereof; that no demand has ever been made upon him for its return. Defendant also testifed that the parties voluntarily signed the notes in question and knew at the time they signed them that they were promissory notes. He testified that the two first notes were given to reimburse him for sums expended in the purchase of braces and other supplies used by him in treating Mr. Mattingly; that it was necessary for Mr. Mattingly to wear braces to protect his leg and back; that the last two notes were given for doctor and hospital bills; that the total charges amounted to $1,689.40; that such charges were very reasonable charges and slightly less than the charges usually made by other hospitals for like services. Defendant denied that Mr. Mattingly ever offered to pay him $300 he had received from the Sand Springs Home and stated that if such amount had been offered, he would have gladly accepted the same and was willing at all times to make any reasonable adjustment, settlement, or compromise of his claim if plaintiffs had shown any disposition to make any payment whatever thereon. This in substance constitutes the evidence in the case.

It is contended by plaintiffs that the judgment rendered is contrary to the weight of the evidence. It is their contention that the burden of proof in this case was on the defendant to prove that the transactions were free from fraud and that he has failed to meet and discharge this burden. It is contended that the relation of physician and patient constitutes a confidential relationship, and it is further contended that where the evidence shows the existence of such relationship and the party in whom confidence is reposed obtains an apparent advantage over the other in a transaction between them, such transaction is presumed to be void and the burden of proof is upon the party who seeks to support it to show by clear proof that he has taken no advantage over the other party and that the transaction is fair, free from fraud, and is conscientious. This is a correct statement of the law. See Clinton v. Miller, 77 Okla. 173, 186 P. 932; McDaniel v. Schroeder, 128 Okla. 91, 261 P. 224; Owens v. Musselman, 190 Okla. 199, 121 P. 2d 998. We, however, fail to see how

the above rule can in any manner benefit plaintiffs in this case. The only manner in which plaintiffs claim to have been imposed upon by defendant was by reason of the alleged false and fraudulent representations made by him in order to procure their signature to the instruments involved. They do not claim to have been otherwise imposed upon. They admitted that they owed a hospital bill; that such bill would amount to approximately $1500. They made no objection to the amount of the bill; they admitted that they intended to sign some instruments to secure the payment of such bill, but they did not intend to give their home as security; that the instruments signed were not the instruments they intended to sign and they were induced to sign them by reason of false and fraudulent representations made by defendant as to the contents thereof. It certainly devolved upon them to present some evidence tending to prove that such representations were in fact made by defendant. This they attempted to do. Plaintiffs testified that when the several deeds and contracts and various notes were presented to them for signature they were in each instance induced to sign the same by reason of false and fraudulent representations made by defendant as above stated. Defendant denied that such representations were made by him. This raised a conflict in the evidence.

It is evident that neither the jury nor the court credited the evidence of plaintiffs on the issue of fraud and the jury found the transactions free from fraud. The trial court adopted such findings and entered judgment in favor of defendant.

After carefully considering and weighing the evidence, assuming that the burden of proof shifted to defendant to prove the transactions free from fraud, we cannot say that the judgment rendered is clearly against the weight of the evidence.

Plaintiffs also contend that the court committed error in giving and refusing instructions. Since this is a case of equitable cognizance and since in such cases the duty devolves on the trial court to eventually determine all questions of fact as well as law the question as to the correctness of the ruling of the court in these respects is immaterial, and such question will not be reviewed by this court on appeal. Reuck v. Green, 84 Okla. 131, 202 P. 790; Town of Jennings v. Pappenfuss, 129 Okla. 85, 263 P. 456; Chiles v. De-Lana, 187 Okla. 415, 103 P. 2d 63.

The allegation in plaintiffs' petition that defendant, Dr. Sisler grossly exaggerated the injuries sustained by Mr. Mattingly and that the charges made were excessive and unreasonable is not supported by the evidence.

Judgment affirmed.

GIBSON, C. J., HURST, V. C. J., and RILEY, OSBORN, BAYLESS, WELCH, and DAVISON, JJ., concur.