United States District Court
No. 87-133

KATHLEEN A. NELSON
AND NELS PHILLIP NELSON

v.

JOHN M. LEWIS, M.D.

November 9, 1987

*Brown and Nixon P.A.*, of Manchester (*Francis G. Murphy, Jr.*, on the brief and orally), for the plaintiffs.

*Sulloway, Hollis & Soden*, of Concord (*Peter A. Meyer* and *Michael P. Lehman* on the brief, and *Mr. Lehman* orally), for the defendant.

JOHNSON, J.   Pursuant to Supreme Court Rule 34, the United States District Court for the District of New Hampshire (*Devine*, C.J.) has certified to us the following questions of law:

> "1. Does any provision of the laws of the State of New Hampshire or the New Hampshire Constitution confer a right on a plaintiff in an action for medical negligence to refuse to permit the defendant to inquire privately of

the plaintiff's treating physician regarding the plaintiff's medical care and treatment?

2. If the answer to the first question is yes, under what circumstances, if any, may a trial court direct that a plaintiff allow the defendant to confer privately with the plaintiff's treating physician regarding the plaintiff's medical care and treatment?"

For reasons stated below, we answer that the laws of the State of New Hampshire do confer on a plaintiff the right to refuse a defendant private interviews with treating physicians and that there are no circumstances under which the trial court may order a plaintiff to permit such interviews.

The facts of the underlying case are briefly these. The defendant, Dr. John M. Lewis, provided the plaintiff, Kathleen A. Nelson (hereinafter "plaintiff"), general medical care and, in particular, attended to her diabetic and gynecological condition and monitored an intrauterine device. In January and February 1982, Dr. Lewis saw the plaintiff on several occasions regarding complaints of discomfort in her lower abdomen. On February 15, he admitted the plaintiff to the Littleton Hospital, where she was diagnosed as having pelvic inflammatory disease. At this time, Dr. John Sauter, an obstetrician-gynecologist, assumed the plaintiff's care and performed on her a total abdominal hysterectomy and bilateral salpingo-oophorectomy. Dr. Sauter continued to treat the plaintiff for problems related to this surgery after her discharge from the hospital.

The plaintiff and her husband now sue the defendant, Dr. Lewis, in the United States District Court alleging that the plaintiff was forced to undergo this surgery because of his failure properly to diagnose and treat her pelvic inflammatory disease. Before the plaintiff brought suit, her counsel met privately with Dr. Sauter, her surgeon, to discuss issues relevant to a possible lawsuit. In October 1986, the defendant's attorney requested the plaintiff's permission to speak with Dr. Sauter in an *ex parte* setting as well. The plaintiff's counsel refused permission for such a meeting. On November 25, 1986, both parties did depose Dr. Sauter. However, at the deposition's conclusion, her attorney stated that the plaintiff would not waive her physician-patient privilege.

As a result of these events, the defendant filed a motion seeking the district court's permission to meet informally with Dr. Sauter. The plaintiff objected to this motion and asked that the district court transfer to this court questions of law regarding the availability of an *ex parte* interview. The certified questions raise im-

portant legal issues as to which there is no controlling precedent in our decisions. These issues not only bear directly on the prospect of settling this case, but have appeared frequently in other recent cases. We therefore respond to them in accordance with Supreme Court Rule 34.

■■ We note, at the outset, that the plaintiff's contention that she has the right to refuse the defendant an *ex parte* interview with her physician is consistent with the physician-patient privilege established by RSA 329:26. RSA 329:26 provides in part that:

> "The confidential relations and communications between a physician or surgeon . . . and his patient are placed on the same basis as those provided by law between attorney and client, and, except as otherwise provided by law, no such physician or surgeon shall be required to disclose such privileged communications."

In order to respond to the district court's inquiries, we must first clarify the nature of our physician-patient privilege and the extent to which it is available in medical negligence actions. Like the attorney-client privilege, the physician-patient privilege is meant to encourage the patient to disclose relevant facts fully so as to receive complete and appropriate treatment. *State v. Kupchun*, 117 N.H. 412, 415, 373 A.2d 1325, 1327 (1977). The privilege parallels the Hippocratic oath in recognizing that much of what a physician learns from his patient may be both embarrassing and of little real consequence to society. *See Stempler v. Speidell*, 100 N.J. 368, 375, 495 A.2d 857, 860 (1980). In order to insure that the patient may reveal facts that could be necessary to successful treatment without fear of humiliation, the legislature has granted the patient a privilege protecting statements made to a physician for purposes of treatment. *Kupchun supra. See* McNamara, *The Hierarchy of Evidentiary Privilege in New Hampshire*, 20 N.H.B.J. 1, 19 (1978). This privilege belongs to the patient, who may prevent the physician from revealing statements whose confidentiality the patient wishes to preserve.

■■ As we have frequently held, the physician-patient privilege is "not absolute and must yield when disclosure of the information concerned is considered essential." *Kupchun supra.* Because we have not specifically addressed this issue before, we now hold, as have the vast majority of courts in States recognizing the privilege, that the patient partially waives her right to confidentiality by putting her medical condition at issue in a suit for medical negligence. *See, e.g., Petrillo v. Syntex Laboratories, Inc.,*

499 N.E.2d 952, 967–68 (Ill. App. Ct. 1986), *appeal denied,* 505 N.E.2d 361 (Ill.), *cert. denied,* 107 S. Ct. 3232 (1987); *Klieger v. Alby,* 125 Wis. 2d 468, 473, 373 N.W.2d 57, 60 (Wis. App.), *pet. for rev. denied,* 127 Wis. 2d 572, 383 N.W.2d 64 (1985); *Trans-World Investments v. Drobny,* 554 P.2d 1148, 1151 (Alaska 1976). Disclosure of the plaintiff's treatment-related statements relevant to claimed negligence is essential if the defendant is to challenge such a claim or the court is to evaluate it. "Even a statutory privilege is not fixed and unbending and must yield to countervailing considerations. . . ." *Opinion of the Justices,* 117 N.H. 386, 388, 373 A.2d 644, 646 (1977). The legislature certainly did not intend to prevent just resolution of such claims by giving the plaintiff the right to deprive the defendant of relevant information.

In holding that a patient waives her privilege in order to facilitate just resolution of her medical negligence action, however, we also hold that this waiver is only partial. It extends not to all information given in the course of treatment, but only to what is relevant to the plaintiff's claim. In recognizing necessary restrictions on the privilege in other contexts, we have consistently held that, absent voluntary waiver, the patient waives the privilege only to the extent necessary to provide essential information. Thus we have held that relevant communications remain privileged for purposes other than recommitment hearings, *Kupchun, supra* at 416, 373 A.2d at 1327–28; that district courts must balance probative value against damage to the therapeutic relationship in deciding whether to admit privileged matters in child-abuse and neglect cases, *In re Brenda H.,* 119 N.H. 382, 386–87, 402 A.2d 169, 172–73 (1979); and that, in examining a witness, a criminal defendant may use only those privileged matters "essential and reasonably necessary to permit counsel adequately to cross-examine for the purpose of showing unreliability or bias," *State v. Farrow,* 116 N.H. 731, 733, 366 A.2d 1177, 1179 (1976). Partial waiver in the context of a medical negligence action is in keeping with these decisions.

We respond to the certified questions in light of the above rules. The district court's inquiry as to whether the plaintiff in a medical negligence action may refuse to permit a defendant to interview her treating physicians *ex parte* presents a question that courts in other jurisdictions have examined at length. Some courts have held, consistent with the defendant's arguments, that *ex parte* interviews are both less expensive and less time-consuming than formal discovery methods, that they encourage a physician's truth and candor, and that, since the plaintiff can always interview her physician *ex*

*parte,* they put the parties on a more equal tactical footing. *See, e.g., Stempler, supra* at 381–83, 495 A.2d at 863–64; *Stufflebam v. Appelquist,* 694 S.W.2d 882, 888 (Mo. App. 1985); *Doe v. Eli Lilly & Co., Inc.,* 99 F.R.D. 126, 128–29 (D.D.C. 1983). Other courts have held, consistent with the plaintiff's arguments, that interviews within the scope of formal discovery procedures provide the defendant all necessary information, while protecting the confidentiality of statements that remain privileged. The presence of both parties' counsel at depositions and their mutual involvement in written discovery help to insure that the physician reveals only those statements that are no longer privileged. *See, e.g., Petrillo supra; Roosevelt Hotel Ltd. Partnership v. Sweeney,* 394 N.W.2d 353, 357–58 (Iowa 1986); *Klieger supra.*

We are unconvinced that defendants in medical negligence actions will be significantly hampered in their attempts to gain essential information if they must forego *ex parte* interviews with plaintiffs' physicians. The defendant has given us no reason to believe that he cannot obtain all necessary information through the formal discovery methods for which our procedural rules provide. Moreover, while *ex parte* interviews may be less expensive and time-consuming than formal discovery and may provide a party some means of equalizing tactical advantage, these interests are ins'gnificant when compared with the patient-plaintiff's interest in maintaining the confidentiality of personal and possibly embarrassing information, irrelevant to the determination of the case being tried.

The participation of the plaintiff's counsel in any interview between the defendant and the plaintiff's physician is essential to insure that private and irrelevant matters remain confidential. The physician, largely unschooled in legal matters, cannot be expected to make the sometimes difficult determination of what matters are relevant to the plaintiff's claim. *Roosevelt Hotel supra.* The participation of both parties' counsel in formal discovery will help to insure that these questions are resolved to the satisfaction of both parties or that more intractable problems are submitted to the trial court for its impartial determination. It will also minimize the possibility that the defendant's counsel may become a witness in the ensuing trial.

██ We therefore hold that a plaintiff who places her medical condition at issue in an action for medical negligence does not waive the physician-patient privilege so as to permit defendants to interview treating physicians *ex parte.* The plaintiff waives her privilege to the extent necessary to provide the opposing party

information essential to defending the action. However, the fact that statements irrelevant to the action remain privileged requires that we recognize the plaintiff's right to limit the defendant to obtaining such information through formal discovery. This rule is consistent with our dual objectives of providing essential information while protecting the confidentiality of personal matters which have little social significance but whose divulgence may aid in successful medical treatment. Thus our response to the district court's first question is "yes" and our response to the second is "under no circumstances."

*Remanded.*

All concurred.