437 S.E.2d 452

**STATE of West Virginia ex rel. Joan B. KITZMILLER, Executrix of the Estate of Eugene O. Kitzmiller, Petitioner,**

**v.**

**Honorable John L. HENNING, Jr., Judge of the Circuit Court of Randolph County; Paul Eugene Nefflen, M.D., and Davis Memorial Hospital, a West Virginia Corporation, Respondents.**

No. 21841.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 14, 1993.

Decided Nov. 2, 1993.

William A. Druckman, Preiser Law Firm, Charleston, for petitioner.

John E. Busch, Peter G. Zurbuch, Busch & Talbott, L.C., Elkins, for respondent Paul Eugene Nefflen, M.D.

David A. Sims, Wallace, Harris and Sims, Elkins, for respondent Davis Memorial Hosp.

NEELY, Justice.

Eugene O. Kitzmiller and Joan B. Kitzmiller filed this malpractice action on 7 May 1992 alleging that Dr. Paul Eugene Nefflen, Dr. Nicholas Martin and Davis Memorial Hospital (hereinafter "the hospital") were negligent in failing to diagnose and treat in a proper and timely manner Mr. Kitzmiller who suffered from cancer of the colon. Mr. Kitzmiller died of cancer. Mr. Kitzmiller's widow and executrix is now the sole surviving plaintiff.

On 3 September 1992 Davis Memorial Hospital served the Kitzmillers with sets of interrogatories and requests for production of documents. Mrs. Kitzmiller refused to execute an authorization that the hospital had appended to one of its interrogatories that would have allowed *ex parte* interviews with Mr. Kitzmiller's treating physicians. Mrs. Kitzmiller instead provided a medical release that excluded *ex parte* contacts with treating physicians.

The hospital filed a motion to compel discovery on 28 May 1993. On 18 June 1993 the Circuit Court of Randolph County issued an order that provides, in pertinent part, that Mrs. Kitzmiller "provide a limited medical authorization that does not authorize *ex parte* communications for a period of 30 days from the time of this order accompanied by a list of all known medical providers ... and ..

provide the defendants a general medical authorization at the end of the thirty (30) day period which permits the authorization of *ex parte* communications with medical providers."

On 16 July 1993 Mrs. Kitzmiller petitioned for a writ of prohibition to prohibit enforcement of the Circuit Court's order permitting *ex parte* communications. The sole issue presented here, then, is whether opposing counsel conducting discovery in civil litigation may interview an injured party's treating physician *ex parte* or is limited to formal discovery methods. We find that opposing counsel is restricted to formal discovery in obtaining medical information; therefore, we award the writ.

## I.

The hospital argues that the absence of a physician-patient privilege in West Virginia negates the existence of a confidential physician-patient relationship. Furthermore, by placing the decedent's medical condition at issue, Mrs. Kitzmiller has waived any physician-patient privilege that might otherwise have existed. Under the hospital's waiver theory, defense counsel should be allowed to conduct *ex parte* interviews of a plaintiff's treating physician.

■ As the hospital asserts, West Virginia has not codified a physician-patient privilege. However, the absence of such a privilege contemplates the release of medical information *only* as it relates to the condition a plaintiff has placed at issue in a lawsuit; it does not efface the highly confidential nature of the physician-patient relationship that arises by express or implied contract.

■ This Court has recognized that a fiduciary relationship arises:

[W]herever a trust, continuous or temporary, is specially reposed in the skill or integrity of another, or the property or pecuniary interests, in the whole or in part, or the bodily custody, of one person, is placed in the charge of another.

*McKinley v. Lynch,* 58 W.Va. 44, 57, 51 S.E. 4, 9 (1905). Although we have not had occasion to address the fiduciary nature of the physician-patient relationship, all reported cases dealing with this point hold that a fiduciary relationship exists between a physician and a patient.[1] Information is entrusted to the doctor in the expectation of confidentiality and the doctor has a fiduciary obligation in that regard. As the Court in *Hammonds v. Aetna Casualty & Surety Company,* 237 F.Supp. 96, 102 (N.D.Ohio 1965) put it:

"[T]hose confidences in the trust of a physician are entitled to the same consideration as a *res* in the control of a trustee, and the activities of a doctor in regard to those confidences must be subjected to the same scrutiny as the activities of a trustee in supervising a *res.*"

This proposition comes as no surprise to the medical profession. The Code of Medical Ethics itself recommends the following attitude:

The confidences ... should be held as a trust and should never be revealed except when imperatively required by the laws of the state. *Principles of Medical Ethics of A.M.A.* Ch. II, sec. 1 (1943).

Private nonadversary interviews of a doctor by adverse counsel threaten to undermine the confidential nature of the physician-patient relationship. It is well settled that

---

1. *See, Petrillo v. Syntex Laboratories,* Inc., 148 Ill.App.3d 581, 102 Ill.Dec. 172, 499 N.E.2d 952 (Ill.App. 1 Dist.1986); *Stafford v. Schultz,* 42 Cal.2d 767, 270 P.2d 1 (1954); *Hales v. Pittman,* 118 Ariz. 305, 576 P.2d 493 (1978); *State ex rel. Stufflebam v. Applequist,* 694 S.W.2d 882 (Mo.App.Ct.1985); *Henkin, Inc. v. Berea Bank & Trust Co.,* 566 S.W.2d 420 (Ky.App.Ct.1978); *Henricks v. James,* 421 So.2d 1031 (Miss.Sup.Ct.1982); *Lilly v. Commissioner,* 188 F.2d 269 (4th Cir. 1951), rev'd on other grds., 343 U.S. 90, 72 S.Ct. 497, 96 L.Ed. 769 (1952); *Stacey v. Pantano,* 177 Neb. 694, 131 N.W.2d 163 (1964); *Hewett v. Bullard,* 258 N.C. 347, 128 S.E.2d 411 (1962); *In re Hendricks' Estate,* 110 N.W.2d 417 (Sup.Ct. N.D.1962); *Mattingley v. Sisler,* 198 Okl. 107, 175 P.2d 796 (1948); *Batty v. Arizona State Dental Board,* 57 Ariz. 239, 112 P.2d 870 (1941); *Foster v. Brady,* 198 Wash. 13, 86 P.2d 760 (1939); *Davis v. Rodman,* 147 Ark. 385, 227 S.W. 612 (1921); *Ulbrand v. Bennett,* 83 Or. 557, 163 P. 445 (1917); *Alexander v. Knight,* 197 Pa.Super. 79, 177 A.2d 142 (1962); *Allison v. Blewett,* 348 S.W.2d 182 (Tex.Civ.App.1961); *Moore v. Webb,* 345 S.W.2d 239 (Mo.App.1961).

when a patient files a lawsuit in malpractice, he impliedly consents to a physician's releasing medical information related to the condition he has placed at issue. The patient's implicit consent, however, is obviously and necessarily limited; he does not consent, simply by filing suit, to his physician's discussing his medical confidences with third parties outside court-authorized discovery methods, nor does he consent to his physician's discussing the patient's confidences in an *ex parte* conference with the patient's adversary.[2]

The danger of *ex parte* interviews of a doctor by adverse counsel is that the patient's lawyer is afforded no opportunity to object to the disclosure of medical information that is remote, irrelevant, or compromising in a context other than the lawsuit at hand. The Iowa Supreme Court has expressed its concern:

> [W]ith the difficulty of determining whether a particular piece of information is relevant to the claim being litigated. Placing the burden of determining relevancy on an attorney, who does not know the nature of the confidential disclosure about to be elicited is risky. Asking the physician, untrained in the law, to assume this burden is a greater gamble and is unfair to the physician.

*Roosevelt Hotel, Ltd. Partnership v. Sweeney*, 394 N.W.2d 353, 357 (Iowa 1986).

A prohibition against *ex parte* interviews, in contrast, protects both the patient and his physician from the danger that adverse counsel may abuse his opportunity to interrogate the physician by privately inquiring into facts or opinions about the patient's mental and physical health or history that may neither be relevant to the patient's lawsuit nor lead to the discovery of admissible evidence.

Moreover, the presence of the patient's counsel at the doctor's interrogation permits the patient to know what his doctor's testimony is, allays a patient's fears that his doctor may be disclosing personal confidences, and thus helps preserve the complete trust between doctor and patient that is essential to the successful treatment of the patient's condition. As *Nelson v. Lewis*, 130 N.H. 106, 111, 534 A.2d 720, 723 puts it:

> [W]hile *ex parte* interviews may be less expensive and time-consuming than formal discovery and may provide a party some means of equalizing tactical advantage, these interests are insignificant when compared with the patient-plaintiff's interest in maintaining the confidentiality of personal and possibly embarrassing information, irrelevant to the determination of the case being tried.

In sum, we conclude that the absence of a formal codified physician-patient privilege does not destroy the confidential nature of the doctor-patient relationship. By filing a malpractice suit, a patient consents only to the release of medical information relevant to the condition the patient has placed at issue. *Ex parte* interviews are prohibited because they pose the danger of disclosing irrelevant medical information that may compromise the confidential nature of the doctor-patient relationship without advancing any legitimate object of discovery.

## II.

■ The hospital argues that *ex parte* discussions are not prohibited by the rules of discovery. Discovery rules, the hospital maintains, do not purport to set forth the exclusive methods by which relevant information may be obtained. Absent a court rule to the contrary, the right of defense counsel to conduct informal interviews of a plaintiff's treating physician should be upheld.

The methods by which discovery may be obtained, under the *West Virginia Rules of*

2. *See, Fields v. McNamara*, 189 Colo. 284, 540 P.2d 327 (Sup.Ct.1975); *Petrillo v. Syntex Laboratories, Inc.*, 148 Ill.App.3d 581, 102 Ill.Dec. 172, 499 N.E.2d 952, 959 (1 Dist.1986); *Crist v. Moffatt*, 389 S.E.2d 41, 46 (N.C.1990); *Ritter v. Rush–Presbyterian–St. Luke's*, 177 Ill.App.3d 313, 126 Ill.Dec. 642, 532 N.E.2d 327, 330 (1 Dist. 1988); *Karsten v. McCray*, 157 Ill.App.3d 1, 109 Ill.Dec. 364, 509 N.E.2d 1376, 1383–84 (2 Dist. 1987); *Jordan v. Sinai Hosp. of Detroit, Inc.*, 171 Mich.App. 328, 429 N.W.2d 891, 899 (1988); *Wenninger v. Muesing*, 307 Minn. 405, 240 N.W.2d 333, 335 (Sup.Ct.1976); *Jaap v. District Court of Eighth Judicial Dist., Mont.*, 191 Mont. 319, 623 P.2d 1389, 1391 (1981).

*Civil Procedure,* are set out in Rule 26(a), *W.V.R.C.P.* That section provides:

> Parties may obtain discovery by one or more of the following methods: depositions upon oral examination or written questions; written interrogatories; production of documents or things or permission to enter upon land or other property for inspection and other purposes; physical and mental examination; and requests for admission.

Obviously, a private interview of an adversary witness is not one of the methods of discovery contemplated by the Rules.

The Rules provide several methods by which discovery of examining physicians may be obtained. If the physician is expected to be called as an expert witness, certain information may be obtained by way of interrogatories pursuant to Rule 26(b)(4)(A), *W.V.R.C.P.*

The most commonly used discovery device for determining the extent of a party's injuries is set forth in Rule 36(a), *W.V.R.C.P.* pursuant to which defendants may obtain an order compelling plaintiffs to submit to a physical examination by a physician.

Rule 35(b), *W.V.R.C.P.* provides that a plaintiff may obtain a copy of the report of a Rule 36(a) examination, but that if the plaintiff so elects, defendant thereupon will be entitled to receive copies of all reports of any prior or subsequent medical examination of the plaintiff concerning the same condition. Under the procedure just set forth in Rule 35(b), *W.V.R.C.P.*, defendant's attorney is permitted to obtain much, if not all, of the information that they currently seek in the action before us. Moreover, Rule 35, *W.V.R.C.P.* is not preemptive of other discovery devices. Rule 35(b)(3), *W.V.R.C.P.* expressly does not preclude discovery of a report of an examining physician or the taking of a physician's deposition.

Further, Rule 34, *W.V.R.C.P.*, which provides for, *inter alia,* the production of documents and things, has recently been amended to allow easier access to information held by third parties in the event that medical records are not in the care and custody of or forthcoming from the plaintiffs.

In short, the hospital has made no real showing that formal discovery procedures are inadequate to uncover the information sought by the private interview. No authority exists under applicable discovery rules, either in West Virginia or in other jurisdictions, for private interviews with plaintiff's physicians. No reason other than expense has been suggested or occurs to us to justify the unwarranted (unauthorized) disclosures of confidential information in private nonadversary interviews and we believe that the potential abuses of *ex parte* interviews is so enormous that expense alone is no reason to accede to the hospital's request.

Accordingly, we hold that the formal discovery methods provided in the *West Virginia Rules of Civil Procedure* set forth the exclusive means by which an adverse party may obtain pretrial discovery of medical testimony relating to a patient's medical condition. Private nonadversary interviews with a patient's attending physicians by the inquiring party's counsel are not contemplated under the *Rules.*

We do not, however, intend by this holding to discourage a physician, with the full permission of the patient and his lawyer, from affording defense counsel a personal interview. Many cases never reach litigation, and surely if such an interview serves to dispose of a patient's claim before litigation or before a trial on the merits, it should be encouraged.

Writ awarded.