## CIRCUIT COURT OF FAIRFAX COUNTY

Patricia Curtis

v.

Fairfax Hospital et al.

January 24, 1995

Case No. (Law) 129754.

BY JUDGE THOMAS A. FORTKORT

This matter was taken under advisement for consideration of the defendant's motion for summary judgment. Since the ruling had been made prior to the order entered January 6, 1995, staying this case, and since there are issues addressed in the letter not germane to the cases pending before the Supreme Court, the Court has decided to issue this opinion letter at this time. For the reasons given below, the motion is denied.

In the course of prenatal treatment at Fairfax Hospital (FH), Patricia Curtis disclosed personal and medical information. Her child, Jessie, was delivered at FH and cared for in the neonatal intensive care unit. It was alleged in the prior suit filed by Mrs. Curtis as executrix of Jessie's estate that the hospital and the attending nurse, Linda Beckett, were negligent in allowing the child to suffocate in her bedding, resulting in brain damage and eventually the child's death on June 7, 1989.

In this action, Mrs. Curtis alleges that the defendants conspired to commit medical malpractice by wrongfully disclosing her confidential medical records on March 7, 1990 (FH disclosed records to its counsel *via* Inova's Director of Legal Affairs, Nancy Perrelli), on April 27, 1990 (Perrelli disclosed records to defendant Beckett), again when Beckett disclosed the records to Mr. Boone, her counsel, and again in 1993 when FH subpoenaed Curtis' medical records from Prince William Hospital and Dr. Kaye, her attending physician.

A malpractice action was filed on October 21, 1991, by Mrs. Curtis alleging the disclosures and seeking recovery on a contract theory. The claim in that action relating to the allegedly unauthorized disclosure was dismissed in April 1993. Judgment was eventually given for Patricia Curtis in her capacity as executrix for Jessie on the underlying negligence claim on March 15, 1994. The present suit was refiled on February 4, 1994, seeking recovery for the alleged disclosures on a tort theory.

The defendants move now for summary judgment as to Count III (conspiracy to commit malpractice) and Count V (punitive damages), in support of which they claim that the statute of limitations bars the action and that the records in question were not privileged from disclosure.

Turning to the statute of limitations issue, the question in the Court's view is not whether there was an on-going conspiracy such that the statute did not begin to run until commission of the last act in the conspiracy. Rather the question is does the tolling of the statute by virtue of the filing of the first suit survive the dismissal of the claim and the refiling of the claim under a new legal theory, or was the institution of this suit a new cause of action such that the statute never tolled as to this new cause? If the cause of action is the same, the statute of limitations remains tolled through the filing of the present suit. If, however, the cause of action is different than the cause of action in the first suit, the statute of limitations was never tolled.

The Court holds that the cause of action is the same in both suits and therefore the statute of limitations, tolled by the first action, remains tolled as to this action. The cases in Virginia assume that the statute of limitations does not start to run after its tolling unless there is a change in the cause of action.[3] A cause of action has been defined as "a set of operative

---

[3] See *Jacobson v. Southern Biscuit Co.*, 198 Va. 813 (1957) (amendment to substitute a new defendant allowed where the new party bore a real relation of interest to the original party and there was no prejudice by the substitution despite running of the statute of

facts which, under the substantive law, may give rise to a right of action."
*Roller v. Basic Construction Co.*, 238 Va. 321, 327 (1989). Here, the
definable transaction, the underlying nucleus of operative facts, was the
disclosure of the records. The cause of action, therefore, is identical in
both cases; the legal theory of recovery is the only difference. The defen-
dant is not surprised by some new set of facts, he is merely confronted
with a different theory of recovery under the same given facts.

After it became apparent that the claim was incorrectly pleaded as a
contract action, the plaintiffs filed the instant suit. They filed this suit
before the dismissal order in the prior case became final. Therefore, in
summary, the statute of limitations was tolled on November 21, 1991, by
the filing of the claim in the prior lawsuit (At Law 110693),[4] and remained
tolled by the filing of this suit on February 4, 1994, no time having elapsed
between finality of the dismissal order in the prior suit and the filing of this
suit.[5] Since the cause of action is the same in both suits, the statute of
limitations is no bar to the present action.

Regarding the issue of waiver of privilege raised by the defendants in
support of the motion for summary judgment, it is not apparent on the face
of the pleadings that this case is one involving a waiver. The Code provi-
sion embodying the physician-patient privilege is found at § 8.01-399, and
subsection B thereof states in part:

---

limitations "provided there is no change in the cause of action originally stated." *Jacob-
son* at 817). Also see *Brunswick Corp. v. Perkinson*, 153 Va. 603 (1930): "In order that
the time during which a former action while pending may be available in repelling the
statute in a subsequent case between the parties, it accordingly appears that the cause of
action in the two cases must be substantially identical." *Brunswick* at 611, upholding a
statute of limitations bar where the cause of action was held to be different. *Bruce v.
Smith*, 581 F. Supp. 902 (W.D. Va. 1984), and *Conley v. Bishop*, 32 Va. Cir. 236 (1993),
involved John Doe defendants who were replaced by the real defendants after the run-
ning of the statute of limitations. The courts held that the statute barred the actions. The
rationale in those cases was that the actual defendants were not involved in the actions
until after the statute had run. Here, on the contrary, the proper defendant has been a
party since the filing of the underlying suit. Therefore, the purpose of the statute of
limitations has not been frustrated as it would have been in the two cases just mentioned,
and the reasoning of the first set of cases cited above applies to this case: the defendant
has been put on notice within two years, and the cause of action is the same in both suits.

[4] One year and eight months having run on the statute of limitations since the initial
alleged disclosure to Perrelli on March 7, 1990.

[5] The prior suit was concluded by a final order of this Court entered March 15, 1994. The
present suit was filed on February 4, 1994. The statute of limitations, tolled by the filing
of the prior suit, did not begin to run again after that suit was ended.

when the physical or mental condition of the patient is at issue in a civil action, facts communicated to, or otherwise learned by, such practitioner . . . shall be disclosed *but only in discovery pursuant to the Rules of Court* [emphasis added].

There is no Virginia authority for the proposition that formal discovery can be ignored when a party's condition is at issue. A brief review of authority in other jurisdictions reveals a split on the question, with the District of Columbia Court of Appeals holding that *ex parte* disclosures are permissible but only where the material is clearly relevant,[6] while in other jurisdictions it has been held that *ex parte* revelation of records was tortious, where, although relevant, the method of discovery was wrongful.[7] The cases reviewed by the Court concern situations where the plaintiff was (or was suing on behalf of) the patient who was injured. In these characteristic cases, the plaintiff is the victim and so his condition is inherently at issue. Likewise, in Virginia, when the plaintiff's condition is immediately at issue by virtue of filing suit as an injured patient, dissemi-

---

[6] *Street v. Hedgepath*, 607 A.2d 1238 (D.C. App. 1992); accord *Heller v. Norcal*, 32 Cal. Rptr. 2d 200 (Cal. 1994); *Brandt v. Medical Defense Associates*, 856 S.W.2d 667 (Mo. 1993); *Domako v. Rowe*, 475 N.W.2d 30 (Mich. 1991); *Blohm v. Minneapolis Urological Surgeons*, 449 N.W.2d 168 (Minn. 1989); *Transworld Investments v. Drobny*, 554 P.2d 1148 (Alaska 1976). In each of these case, the condition of the *victim* of a malpractice was at issue, unlike the present case which involves disclosure not of the records of Jessie, but of Mrs. Curtis. So at best, these cases merely *suggest* a different ruling than this Court is giving.

[7] *State ex rel. Kitzmiller v. Henning*, 190 W. Va. 142, 437 S.E.2d 452 (1993), where an executrix sued a hospital and doctors for malpractice towards plaintiff's decedent. At issue was the permissibility of *ex parte* communications between defendants and treating physicians. The court held that formal discovery must be used: "we hold that the formal discovery methods . . . set forth the exclusive means by which an adverse party may obtain pretrial discovery of medical testimony relating to a patient's medical condition." Moreover, the plaintiff's implicit consent by virtue of filing suit did not extend "to his physician's discussing his medical confidences with third parties outside court-authorized discovery methods." *Henning* at 456, 455. Other jurisdictions requiring formal use of discovery: *Church's Fried Chicken v. Hanson*, 845 P.2d 824 (N.M. App. 1992) (construing the physician-patient privilege in a workers' compensation setting); *Roosevelt Hotel Ltd. Partnership v. Sweeney*, 394 N.W.2d 353 (Iowa 1986), *Crist v. Moffat*, 326 N.C. 326 (1990), *Nelson v. Lewis*, 534 A.2d 720 (N.H. 1987), *Petrillo v. Syntex Laboratories, Inc.*, 499 N.E.2d 952 (Ill. 1986); *Mull v. String*, 448 So. 2d 952, 954 (Ala. 1984) (note 2). In all of these cases, the plaintiff was also the victim of the alleged injuries. The rationale of these cases is even more compelling in the circumstances of the instant case.

nation of records to the defendant's attorney is not tortious.[8] In the instant case, the victim was Jessie, and her medical condition would rightly be immediately at issue by virtue of the filing of the suit for damages. But Patricia Curtis' condition was not inherently at issue. Therefore, although one might argue that the sort of *ex parte* discovery conducted here would be permissible as to records concerning Jessie (an issue not presented here), the need for obeying the formal rules is paramount with regard to any other party whose condition is not at issue by the very fact of filing the suit.

Since Virginia has not adopted a position on this question, this Court believes it is appropriate to abide closely by the statutory language and not unduly expand it. The Court finds persuasive the rationale supplied by other courts in insisting upon use of formal discovery.[9] Even though many of the cases are concerned with *ex parte* contacts with physicians, rather than disclosure of records, the same reasoning cited in the cases for prohibiting the one applies to prohibiting the other, namely, the sanctity of the physician-patient relationship and the inherent potential for abuse when court oversight is absent. Moreover, the records are merely the embodiment of the physician's observations and conclusions and may encompass more material than that which is strictly relevant.

---

[8] Although such dissemination would still be subject to § 8.01-399(B), cited above, which requires compliance with formal discovery. Moreover, it is the view of the Court that if the privilege is not waived, then disclosure is tortious even if made only to defense counsel. There is no reason to accept that where a patient's condition is not inherently at issue his or her records may be released simply to hunt for a grounds of defense. The court, through the discovery process, must be allowed the opportunity to safeguard the privilege of the physician-patient relationship, where that privilege has not been waived by placing one's own condition into issue. Even the court in *Hedgepath* (*supra*, note 4, at 1246) recognized that disclosure would be tortious if the disclosure exceeded the scope of the waiver. In this case, if Mrs. Curtis' entire file was disclosed, much irrelevant information may have been disseminated.

[9] E.g., *Anker v. Brodnitz*, 413 N.Y.S.2d 582 (1979), *aff'd* 422 N.Y.S.2d 887 (1979), where a doctor not involved in the suit made unauthorized disclosures to the defendant's attorney: "Compliance with formal discovery procedures would insulate a physician against such improper pressures." The court there further stated, "whether a physical or mental condition is in controversy often requires careful judicial scrutiny and not a mere cursory reading of the complaint," and that formal discovery affords "an opportunity to object to the disclosure of medical information that is remote, irrelevant, or otherwise improper." *Brodnitz* at 585-586.

This analysis is not changed by the fact that other judges of this court have granted motions to compel in the prior case for the records in question. They were not ruling after the fact that the *ex parte* disclosures were appropriate, as the defendants contend; they merely ruled that, formal discovery requests having been made, the requests would be granted since Mrs. Curtis's condition had been placed in issue *by the defendants*. This appropriate formal discovery should have been made in the first instance and not as an afterthought following inappropriate *ex parte* disclosures. This would have allowed the court to exercise its function and pass on the relevancy of the discovery sought, thereby protecting and fostering the confidential relationship which is the concern of the Code's protections. The rules for discovery are there for a reason, and § 8.01-399(B) requires that they be used in the present case.

Moreover, the fact that the disclosures at issue were made to the hospital's attorney *via* Ms. Perrelli does not somehow shroud the disclosure within the attorney-client privilege.[10] The records were disseminated with the understanding that they would be seen by others besides the hospital's attorneys. Moreover, it cannot be said that the records were prepared in anticipation of litigation. Therefore, under Virginia law, there is no attorney-client privilege with respect to these records. See *Commonwealth v. Edwards*, 235 Va. 499, 509-510 (1988). This being the case, the Court can see no difference between the disclosure to the defendant's attorney and disclosure to obvious third parties, such as Ms. Beckett. The hospital's attorneys should have sought court sanction for the disclosure of the

---

[10] None of the cases relied upon by the Court for its position that formal discovery is mandatory distinguish dissemination to attorneys for a defendant from dissemination to any other person; the assumption is that where the plaintiff's condition is at issue, the disclosure is acceptable, but only pursuant to formal discovery. The tort action will lie against whomever disseminated or caused a dissemination outside of formal discovery. See, *Henning, supra,* note 5, at 455; *Brandt, supra,* note 4, at 673 (medical records can only be disclosed to litigation opponents *after* a valid waiver); *Church's Fried Chicken, supra,* note 5, at 829 (citing *Petrillo* favorably as to public policy rationale for prohibiting *ex parte* disclosures to a "legal adversary" as destructive of the "trust and faith invested in [the physician] by the patient"); *Nelson, supra,* note 5, at 723 ("the fact that statements irrelevant to the action remain privileged requires that we recognize the plaintiff's right to limit the defendant to obtaining such information through formal discovery.") Moreover the general principle of *expressio unius exclusio alterius* applies here where the statute clearly delineates when disclosure of confidential information is permissible; absent a waiver and outside of formal discovery to one's attorney and others is not a circumstance enumerated in the statute.

records of an individual whose condition was not inherently at issue in the case. The hospital had no right to disseminate the records of Ms. Curtis as if they owned them outright. The records repose in the care of Fairfax Hospital; this custodianship does not confer a proprietary right in the records. This is evident from the protections afforded by § 8.01-399(B) for records made as a result of the physician-patient relationship.[11]

Therefore, for purposes of ruling on the motion for summary judgment, it is enough to note that the plaintiff has alleged disclosures by the defendants outside of formal discovery, which disclosures, if proven, would subject the defendants to liability. Since there are material questions of fact in dispute, the motion for summary judgment is inappropriate. *See* Rule 3:18.

Finally, regarding the question of damages, although the plaintiff has a heavy burden demonstrating damages in this case, since the disclosures were limited in nature and found to be relevant after their inappropriate disclosure, nonetheless damages may lie for a tort such as this. Although "in the absence of accompanying physical harm or wanton and willful conduct, emotional distress damages are not recoverable," there are "a small number of exceptions to this rule and we have allowed recovery of emotional distress damages based on appropriately pled facts." *Carstensen v. Chrisland Corp.*, 247 Va. 433, 446 (1994). One such exception is "where a cause of action existed independently of such [emotional] harm." *Sea Land Service, Inc. v. O'Neal*, 224 Va. 343, 354 (1982). Here, there is an independent cause of action sounding in tort for the unauthorized disclosure. The emotional harm is distinct from the cause of action which led to this suit. Therefore, problematic though her damages may be to prove, the plaintiff has alleged a legally cognizable claim.

The motion for summary judgment is denied.

---

[11] See also, e.g., §§ 32.1-70 and 32.1-40, *inter alia*. Such statutes belie the position that records are property of hospitals. As property, hospitals would have much greater control over the release of patient records than they do in fact.