Hillsborough-southern judicial district
No. 2005-596

LINDA DESCLOS

v.

SOUTHERN NEW HAMPSHIRE MEDICAL CENTER & a.

Argued: February 8, 2006
Opinion Issued: June 9, 2006

*Nixon, Raiche, Manning, Vogelman & Leach, P.A.,* of Manchester (*Kevin M. Leach* on the brief and orally), for the plaintiff.

*Sulloway & Hollis, P.L.L.C.*, of Concord (*Michael P. Lehman* and *Margaret H. Nelson* on the brief, and *Mr. Lehman* orally), for the defendants.

*Burns, Bryant, Cox, Rockefeller & Durkin, P.A.*, of Dover, by brief, for the New Hampshire Trial Lawyers Association, as *amicus curiae*.

GALWAY, J. The plaintiff, Linda Desclos, brings this interlocutory appeal from a Superior Court (*Groff*, J.) order granting the defendants, Southern New Hampshire Medical Center, James F. Carroll, M.D., and Nurse Jane Doe, access to her psychiatric and psychological records. We vacate and remand.

The record reveals the following facts. Desclos brought a suit for medical negligence, alleging that on August 18, 2003, she sought treatment from the defendants who failed to recognize her symptoms of spinal cord injury. As a result, the suit alleged, Desclos suffered irreversible quadriplegia. She claimed damages including pain and suffering, loss of earning capacity, and loss of enjoyment of life.

The defendants sought all of Desclos' psychiatric and psychological records created before August 18, 2003. Their motion stated that, although Desclos had released her psychological records created after the injury, the records of her psychiatric history prior to the injury would be relevant to her damage and liability claims.

The trial court ruled: "The plaintiff's psychiatric and psychological records are clearly relevant to the issue of damages in regard to pain and suffering and loss of enjoyment of life, and are reasonably calculated to lead to the discovery of admissible evidence." In denying Desclos' motion to reconsider, the trial court further ruled that "by the nature of the plaintiff's claim [for loss of enjoyment of life and pain and suffering,] she has waived the psychotherapist-patient privilege."

On appeal, Desclos argues that the trial court's order violates the psychotherapist-patient privilege, and that she did not waive the privilege simply by claiming generic damages that are likely to arise from the injuries caused by the medical negligence alleged. She notes that she neither brought a claim for intentional or negligent infliction of emotional distress, nor claimed separate emotional distress damages, specifically to avoid waiving her privilege.

The defendants argue that the trial court properly balanced Desclos' privacy rights in her mental health records against the defendants' need to obtain evidence relevant to their defense. Discovery of Desclos' mental health records created prior to her injury is necessary, the defendants argue, for them to respond to the damage claims of pain and suffering, loss

of earning capacity, and loss of enjoyment of life. They also argue that they need the records to challenge Desclos' reliability in reporting symptoms.

We review a trial court's decisions on the management of discovery and the admissibility of evidence under an unsustainable exercise of discretion standard. *In re Juvenile 2002-209*, 149 N.H. 559, 561 (2003). We will not disturb the trial court's order absent an unsustainable exercise of discretion. *Petition of Haines*, 148 N.H. 380, 381 (2002). To meet this standard, Desclos must demonstrate that the trial court's rulings were clearly untenable or unreasonable to the prejudice of her case. *In re Juvenile 2002-209*, 149 N.H. at 561.

At issue in this case is the psychotherapist-patient privilege. Evidentiary privileges are exceptions to the general duty to give all testimony that one is capable of giving. *Jaffee v. Redmond*, 518 U.S. 1, 9 (1996); 1 J. STRONG ET AL., MCCORMICK ON EVIDENCE § 72, at 298-99 (5th ed. 1999). Such exceptions are justified by a public good that transcends the general principle of using all rational means for ascertaining truth. *Jaffee*, 518. U.S. at 9. Evidentiary privileges promote sufficiently important interests to justify the sacrifice of some available probative evidence. *Id.* at 9-10; STRONG, *supra* § 72. New Hampshire has codified the psychotherapist-patient privilege in RSA 330-A:32 (2004), which states, in pertinent part:

> The confidential relations and communications between [a licensed mental health practitioner] and such licensee's client are placed on the same basis as those provided by law between attorney and client, and nothing in this chapter shall be construed to require any such privileged communications to be disclosed, unless such disclosure is required by a court order.

*See also* N.H. R. Ev. 503(b). We recently emphasized the importance of the psychotherapist-patient privilege:

> By fostering productive relationships between therapists and their clients, the therapist-client privilege advances the public good accomplished when individuals are able to seek effective mental health counseling and treatment. . . . The mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment. It is difficult if not impossible for a psychotherapist to function without being able to assure patients of confidentiality and, indeed, privileged communication.

*In the Matter of Berg & Berg*, 152 N.H. 658, 665 (2005) (quotations and citations omitted). Neither party disputes that the records sought by the

defendants in the instant case are privileged communications pursuant to RSA 330-A:32 and New Hampshire Rule of Evidence 503(b).

■ Despite the privileged nature of the communications at issue, the trial court applied the "relevance" standard to determine whether to compel production of the records for pretrial discovery. The trial court stated that Desclos' psychiatric and psychological records were "clearly relevant to the issue of damages in regard to pain and suffering and loss of enjoyment of life," and were "reasonably calculated to lead to the discovery of admissible evidence." Superior Court Rule 35(b)(1) sets forth the standard that the trial court used, but the rule specifically exempts privileged material from that standard, stating:

> Parties may obtain discovery regarding any matter, *not privileged*, which is relevant to the subject matter involved in the pending action .... It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

SUPER. CT. R. 35(b)(1) (emphasis added). Accordingly, the trial court applied an incorrect standard for discovery of privileged material. Relevance alone is not the standard for determining whether or not privileged materials should be disclosed. *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 864 (3d Cir. 1994); *Alcon v. Spicer*, 113 P.3d 735, 741 (Colo. 2005); *Gould, Larson, Bennet, Wells & McDonnell, P.C. v. Panico*, 869 A.2d 653, 659-660 (Conn. 2005); *R.K. v. Ramirez*, 887 S.W.2d 836, 842 (Tex. 1994).

■ Generally, there are two means by which disclosure of privileged information may occur: (1) the court finds a waiver of the privilege, *Petition of Dean*, 142 N.H. 889, 890 (1998); or (2) the court orders a piercing of the privilege, *State v. Elwell*, 132 N.H. 599, 605 (1989). We address each method in turn.

*I. Waiver*

■ The defendants argue that Desclos impliedly waived her psychotherapist-patient privilege by claiming damages for loss of enjoyment of life, loss of earning capacity, and pain and suffering. Courts in other jurisdictions have held that a plaintiff impliedly waives the psychotherapist-patient privilege by putting his or her emotional or mental condition "at issue," *e.g., Jackson v. Chubb Corp.*, 193 F.R.D. 216, 225 (D. N.J. 2000); *State ex rel. Dean v. Cunningham*, 182 S.W.3d 561, 567 (Mo. 2006) (en banc), or by "injecting his or her mental condition into the

case," *e.g., Hoffman v. Brookfield Republic, Inc.*, 87 P.3d 858, 863 (Colo. 2004). Though we have never explicitly held that a plaintiff may impliedly waive the psychotherapist-patient privilege, we have stated that a plaintiff may impliedly waive the attorney-client privilege by putting the privileged communications "at issue." *Dean*, 142 N.H. at 890. We have additionally qualified waiver of the attorney-client privilege by "limit[ing] the extent of an at-issue waiver of the attorney-client privilege to circumstances in which the privilege-holder injects the privileged material itself into the case." *Id.* When a party asserting the attorney-client privilege injects privileged material into the case "such that the information is actually required for resolution of the issue, the privilege-holder must either waive the attorney-client privilege as to that information or be prevented from using the privileged information to establish the elements of the case." *Aranson v. Schroeder*, 140 N.H. 359, 370 (1995) (quotations and ellipsis omitted). Since our law places the psychotherapist-patient privilege on the same basis as the attorney-client privilege, RSA 330-A:32; N.H. R. Ev. 503(b), we conclude that a party waives the psychotherapist-patient privilege by putting the confidential communications at issue by injecting the privileged material into the case. If the privilege-holder has injected the privileged material into the case such that the information is actually required for resolution of the issue, then the privilege-holder must either waive the privilege as to that information or be prevented from using the privileged information to establish the elements of the case.

We must now determine whether the trial court was correct in ruling that Desclos impliedly waived her psychotherapist-patient privilege by asserting damage claims for pain and suffering, loss of earning capacity, and loss of enjoyment of life. Though we have never stated what actions by a plaintiff will place psychotherapy communications at issue and inject them into the case such that they are required for resolution of the issue, we have addressed similar issues in the attorney-client and physician-patient contexts.

In *Dean*, the petitioner moved for a new criminal trial, claiming ineffective assistance of counsel. *Dean*, 142 N.H. at 890-91. The State argued that the petitioner waived his attorney-client privilege and sought to interview the petitioner's trial counsel. *Id.* at 890. We held that the petitioner waived his attorney-client privilege by basing his motion for a new trial upon an ineffective assistance of counsel claim because, "Claims of ineffective assistance of counsel go to the core of attorney-client communications. Such claims challenge the lawyer's representation of the client." *Id.* at 891. Thus, the petitioner waived the privilege because the cause of action that he brought required consideration of the very communications that he sought to protect: those between himself and his

attorney. In this way, the petitioner injected his privileged communications into the case such that it was required for resolution of the ineffective assistance of counsel claim.

In contrast, we upheld the physician-patient privilege in *State v. Elwell. Elwell*, 132 N.H. at 607. There, the State charged a defendant with negligent homicide due to his involvement in an auto accident. *Id.* at 601-02. After the accident, the defendant went to a hospital, where doctors took a blood sample, revealing that the defendant had a blood-alcohol content of .14 percent. *Id.* at 601. The State sought to use the blood sample as evidence and the defendant objected, arguing that the physician-patient privilege applied. *Id.* at 602. The State countered that the defendant waived the privilege by pleading not guilty. *Id.* at 607. We ruled that the defendant's plea of not guilty was insufficient to place the privileged communications between a doctor and a patient at issue in the dispute. *Id.* Although the legislature has since modified the physician-patient privilege to exclude blood samples, *see* RSA 329:26 (2004), our waiver analysis stands. Because the defendant's plea did not inherently require information regarding the blood sample to resolve the issue of his innocence, the defendant did not waive his privilege.

Other jurisdictions have similar waiver analyses in the psychotherapist-patient context. There is broad agreement in both federal and state courts that the holder of a psychotherapist-patient privilege will impliedly waive the privilege by bringing a cause of action that requires use of the privileged material to prove the elements of the case. *E.g., Vanderbilt v. Town of Chilmark*, 174 F.R.D. 225, 230 (D. Mass. 1997); *Cunningham*, 182 S.W.3d at 568; *see also* 3 WEINSTEIN'S FEDERAL EVIDENCE § 504.07[8] (J. McLaughlin ed., 2d ed. 2006) (stating that the "narrow view" taken by some courts, which is the view least likely to find waiver, will do so if the plaintiff makes affirmative use of the mental condition in connection with the case). The most helpful distinction for the instant case is whether or not to imply a waiver as a result of a damage claim, rather than as a result of a cause of action.

In *Cunningham*, the Missouri Supreme Court considered whether a plaintiff bringing a cause of action for sexual harassment placed her mental condition "in issue" or "in controversy," and thus impliedly waived her psychotherapist-patient privilege, by claiming damages for emotional distress, humiliation, inconvenience, and loss of enjoyment of life. *Cunningham*, 182 S.W.3d at 567. The court determined that if the plaintiff used expert testimony or evidence of medical or psychological treatment to support her damage claim for emotional distress, she would waive the privilege. *Id.* at 568. The plaintiff would not waive her privilege, however, if she sought emotional distress damages of a "generic kind," meaning "the

kind of distress or humiliation that an ordinary person would feel in such circumstances. These damages are generally in the common experience of jurors and do not depend on any expert evidence." *Id.* The court distinguished the plaintiff's claim of physical injury with accompanying generic emotional distress damages from cases in which a plaintiff brings a cause of action for negligent infliction of emotional distress. *Id.* at 568. In cases of the latter sort, the plaintiff must show a medically diagnosed mental condition resulting from a negligent act. *Id.* Such a claim, by its very nature, would waive the privilege because it would require medical evidence to support the claim. *Id.*

This decision is consistent with our rule on waiver of the attorney-client privilege, which is that the holder of the privilege waives it when he "has injected privileged material into the case, such that the information is actually required for resolution of the issue." *Aranson*, 140 N.H. at 370. When a holder of the psychotherapist-patient privilege brings a cause of action for a physical injury, that will not waive the privilege because the privileged information will not be required for resolution of the claim. By the same reasoning, if the privilege-holder also alleges a damage claim for "generic" mental suffering that is incident to the physical injury, the privilege will not be waived because the privileged information will not be required for resolution of the claim. We use the term "generic" as did the Missouri Supreme Court, meaning mental suffering that is in the common experience of jurors, does not depend upon expert evidence, and does not exceed the kind of mental suffering that an ordinary person would experience in similar circumstances. Because generic mental suffering is in the jurors' common experience and does not depend upon expert evidence, it will not involve any privileged records from psychotherapy sessions. Thus, a damage claim for generic mental suffering that is incident to a physical injury will not waive the psychotherapist-patient privilege because a resolution of the claim will not require any privileged information.

In the instant case, Desclos brought a cause of action for medical negligence and claimed damages that included pain and suffering, loss of enjoyment of life, and loss of earning capacity. As the primary injury that Desclos claimed was a physical injury, the mental components of the pain and suffering, loss of enjoyment of life, and loss of earning capacity claims were incident to the physical claim. The record before us contains no specific description of Desclos' damage claims. Because we do not know the details of the mental suffering that Desclos claims to have experienced as a result of the alleged negligence, we cannot determine whether or not she has waived her psychotherapist-patient privilege by injecting her

mental condition into the case. We can, however, provide guidance for the trial court. If Desclos claims that her pain and suffering, loss of enjoyment of life, or loss of earning capacity include a clinically diagnosed disorder, such as depression or post traumatic stress disorder, or if the claims involve expert testimony or other expert evidence regarding her mental suffering, that will waive her psychotherapist-patient privilege. If, however, the mental suffering that Desclos claims involves only generic mental suffering, then such claims would not waive her psychotherapist-patient privilege. Because the record before us contains insufficient detail regarding Desclos' claims, we vacate and remand to the trial court for a determination based upon the standard that we have articulated.

█ The final issue that we must address in regard to implied waiver is the scope of such a waiver. In the attorney-client and physician-patient realms, an implied waiver does not waive the privilege for all confidential communications between the attorney and client or doctor and patient. *Nelson v. Lewis*, 130 N.H. 106, 110 (1987); *Dean*, 142 N.H. at 890-91. "[Implied] waiver is only partial. It extends not to all information given in the course of treatment, but only to what is relevant to the plaintiff's claim." *Nelson*, 130 N.H. at 110. Given the similarity between the attorney-client and psychotherapist-patient privileges, we conclude that an implied waiver of the psychotherapist-patient privilege extends only to confidential communications that are relevant to the plaintiff's claim. If the trial court determines on remand that Desclos impliedly waived her psychotherapist-patient privilege, the trial court may compel discovery of only those psychotherapeutic records necessary to resolve Desclos' claims, which may require *in camera* review.

## II. Piercing the Privilege

The defendants next contend that the trial court properly ordered disclosure of Desclos' psychotherapeutic records because they may provide information as to her reliability in reporting her symptoms. This lack of reliability, the defendants argue, is relevant to the issue of liability, because there is a factual dispute regarding what symptoms Desclos described to her treating physician.

█ Though the purpose of the psychotherapist-patient privilege is to encourage trust and disclosure between patient and psychotherapist so as to maximize the effectiveness of therapy, the privilege is not absolute. *State v. Kupchun*, 117 N.H. 412, 415 (1977). The psychotherapist-patient privilege must yield when disclosure of the information concerned is considered "essential." *Id.* at 415. "To establish essential need, the party seeking the privileged records must prove both that the targeted

information is unavailable from another source and that there is a compelling justification for its disclosure." *In re Grand Jury Subpoena (Medical Records of Payne)*, 150 N.H. 436, 442 (2004).

■ Before establishing essential need for the information contained in the privileged records, however, the party seeking to pierce the privilege must first "establish a reasonable probability that the records contain information that is material and relevant to" the party's defense or claim. *State v. Gagne*, 136 N.H. 101, 105 (1992). We required such a showing in *Gagne*, in which a criminal defendant requested discovery of the alleged victims' psychotherapeutic records, because such records may have contained information relevant to his defense, such as the victims' reliability. *Id.* at 103-04. This initial showing of probability was necessary to protect both the victims' privacy interests in the confidential records and the defendant's due process interests in obtaining potentially exculpatory information. *Id.* at 105. The "reasonable probability" showing also established an initial, minimum standard that the party seeking to pierce the privilege had to meet before the trial court undertook an *in camera* review and a determination of whether the privilege should be abrogated. *Id.* at 104. We find the interests of privacy, due process, and judicial economy compelling in the instant case, as well. Thus, before the defendants may argue that they have an essential need for the privileged information, they must make an initial showing sufficient to establish a reasonable probability that the records they seek contain information that is material and relevant to their defense. Such a showing may rely upon inadmissible evidence, such as hearsay evidence. *See In re Grand Jury Subpoena*, 150 N.H. at 445 (concluding that hearsay evidence of a defendant's lacerations and surgery was sufficient to demonstrate a reasonable probability that the defendant's privileged medical records contained information regarding his injuries).

■ If the defendants successfully make a showing of reasonable probability, they may then argue to the trial court that the information they seek is "essential." The first requirement of showing essential need is that the privileged information sought must be unavailable from another source. *Id.* at 442. To determine whether a reasonable alternative source of information is available, we use a three-part test: (1) whether the alternative evidence is admissible at trial; (2) whether the alternative evidence is sufficient to overcome a motion for directed verdict, when applicable; and (3) whether the party seeking to pierce the privilege has made adequate efforts to investigate alternative sources. *See id.* at 442-43. When presented with an unavailability argument, the trial court must make explicit findings and rulings on each of the above prongs. *Id.* at 444.

The importance of the first prong is that we consider unavailable any alternative evidence not admissible at trial. *Id.* at 443. For the second prong, if the alternative evidence is insufficient to survive a motion for directed verdict, then it is, for practical purposes, unavailable. *Id.* The third prong is the most rigorous, requiring that the party seeking to pierce the privilege make an offer of proof demonstrating "substantial, good faith efforts to discover alternative sources of competent evidence." *Id.* at 444. Conclusory statements that alternative sources are non-existent or futile to explore will not be sufficient. *Id.* Nor is it sufficient to simply argue that the privileged information provides the best source of evidence sought or the least burdensome means to acquire such evidence. *Id.* at 443. On the other hand, we will not require the exhaustion of alternative sources of information that offer little chance of revealing alternative evidence. *Id.* The determination as to whether or not the party seeking to pierce the privilege has made adequate investigative efforts to satisfy the third prong is, at least initially, a question of fact for the trial court to resolve. *Id.* at 444.

In the instant case, there is no record of whether or not the information that the defendants seek from Desclos' psychotherapeutic records is unavailable from other sources. The defendants have presented no evidence on the record that they have made adequate efforts to investigate alternative sources that could provide the information that they seek. Further, they have not argued that any potentially available alternative evidence would be inadmissible. The trial court has made no explicit findings on any of the applicable prongs of the unavailability test. Accordingly, we must remand the case on the issue of unavailability. If the defendants argue that they may pierce the privilege because the information that they need is essential, they must argue that such information is unavailable from another source, and the trial court must make the requisite findings, in accordance with the standard articulated above.

We now address whether there is a compelling justification for the information's disclosure. We considered this issue in *In re Grand Jury Subpoena*, and determined that obtaining privileged information to establish an element of a felony criminal offense constituted a compelling justification to support piercing the physician-patient privilege. *In re Grand Jury Subpoena*, 150 N.H. at 442. Though *In re Grand Jury Subpoena* is our only decision using the "compelling justification" test, we have employed similar reasoning in other decisions. In *State v. Pelletier*, 149 N.H. 243, 249 (2003), we determined that the spousal privilege under New Hampshire Rule of Evidence 504 would yield when disclosure would

provide relevant information concerning alleged sexual abuse of a child. We attributed this abrogation of the privilege to public policy, stating that "Child abuse is a horrendous crime," and that "[i]t would be unconscionable to permit a privilege grounded on promoting communications of trust and love between husband and wife to prevent a properly outraged spouse with knowledge from testifying against the perpetrator of such a crime." *Id.* at 248-49. In *Kupchun*, we determined that piercing the psychotherapist-patient privilege was appropriate in the context of a criminal commitment hearing. *Kupchun*, 117 N.H. at 415-16. The purpose of the hearing was for the superior court to determine whether it would be dangerous for the defendant to go at large. *Id.* at 415. For the court to make such a determination, we held that it had to "be presented with the best information available which has a bearing on defendant's dangerousness or mental condition." *Id.* Our decisions in *In re Grand Jury Subpoena*, *Pelletier*, and *Kupchun*, show that we will find a compelling justification for the disclosure of privileged information when a sufficiently important public interest is at stake.

The question before us is whether the defendants' desire to obtain privileged information that could affect their liability presents a compelling justification for disclosure of the information. The defendants' argument implicates the fairness of trial proceedings. It is well established that a fair trial is a fundamental constitutional right for parties in both criminal and civil cases. *E.g.*, *Davidson v. Riley*, 44 F.3d 1118, 1122 (2d Cir. 1995); *Lemons v. Skidmore*, 985 F.2d 354, 357 (7th Cir. 1993); *Bailey v. Systems Innovation, Inc.*, 852 F.2d 93, 98 (3d Cir. 1988). Accordingly, if a party seeking to pierce a privilege showed that there would be a deprivation of a fair trial without access to the privileged information so that there would not be a just resolution of the issues involved, such a showing would present a sufficiently important public interest to qualify as a compelling justification. Whether the defendants in the instant case have made such a showing is unclear from the record. Though we can discern the basic intent of the defendants' argument, they have provided us with insufficient factual detail regarding their fairness argument. We do not know, for instance, the extent to which deprivation of the privileged information would impair their ability to fairly defend themselves. We remand this issue to the trial court for a determination on whether or not the defendants' argument presents a compelling justification to pierce the psychotherapist-patient privilege. We note that, though the defendants' argument in the instant case was based upon liability, the fundamental fairness of a trial would undoubtedly be implicated by other arguments.

An example is an argument that the privileged information was the only means for a defendant to show a break in the chain of causation.

■ We finally instruct the trial court that if the party seeking to pierce the privilege successfully shows that the information sought is essential, the trial court should conduct an *in camera* review. *In re Grand Jury Subpoena*, 150 N.H. at 448. The trial court's responsibility during this review is to limit the disclosure of privileged information to that which is relevant to the purpose for which the disclosure was ordered. *Id.*

*Vacated and remanded.*

DALIANIS, DUGGAN and HICKS, JJ., concurred.