27 A.3d 813 (2011)
162 N.H. 64
Petition of STATE of New Hampshire (State of New Hampshire v. Richard MacDonald).
No. 2010-550.
Supreme Court of New Hampshire.
Argued: February 17, 2011.
Opinion Issued: May 17, 2011.
*814 Michael A. Delaney, attorney general (Susan P. McGinnis, senior assistant attorney general, on the brief and orally), for the State.
Samdperil & Welsh, PLLC, of Exeter (Richard E. Samdperil on the memorandum of law and orally), for the defendant.
HICKS, J.
The State filed a petition for writ of certiorari, see Sup.Ct. R. 11, challenging an order of the Superior Court (Brown, J.) granting the parties access to medical and mental health records of K.H. We reverse and remand.
The record supports the following facts. In July 2009, the Strafford County Grand Jury indicted the defendant, Richard MacDonald, on one count of aggravated felonious sexual assault, alleging that he engaged *815 in sexual penetration with K.H., a person whom he knew to be mentally defective. See RSA 632-A:2, 1(h) (2007). On April 16, 2010, the defendant filed a motion seeking an in camera review of K.H.'s medical and mental health records from five stays at the New Hampshire Hospital. The defendant also requested an in camera review of records from Community Partners or other providers for the twelve months preceding the alleged assault. The State did not object to the documents being provided to the court for in camera review. On April 26, the trial court granted the defendant's motion.
On June 29, the court issued an order noting that the New Hampshire Hospital had "provided 2,002 pages of admission records for" K.H., but that the records did not "encompass all that were requested." It then ruled:
The Defendant is charged with Aggravated Felonious Sexual Assault, the State having alleged that the victim was mentally defective. The Court assumes without having reviewed the records produced to date that portions of the records may well be relevant to the State and Defense since the victim's mental limitations, if any, are an element of the pending charge. With the above in mind the Court shall provide to Counsel a complete set of the records produced to date and will supplement such upon receipt of additional records from the New Hampshire State Hospital, Community Partners and[/]or other providers.
Counsel shall keep the records produced confidential and not share them with third parties and return the records for court destruction at the conclusion of the prosecution. Confidentiality means for Counsel's eyes only. Counsel shall flag what they deem to be relevant for the Court[']s consideration as to admissibility. A closed hearing will be calendared to address admissibility issues.
On July 8, the State moved for reconsideration of the court's ruling, requesting that the court conduct an in camera review consistent with its earlier order and "[r]elease only those records deemed appropriate after" the in camera review. The defendant objected. On July 15, the trial court summarily denied the State's motion. The State then filed this petition for writ of certiorari challenging the trial court's ruling. Trial of this matter has been stayed and both parties have agreed not to review the disputed records until we have rendered a decision on the State's petition.
Certiorari is an extraordinary remedy that is not granted as a matter of right, but rather at the discretion of the court. Petition of State of N.H. (State v. Laporte), 157 N.H. 229, 230, 950 A.2d 147 (2008); see Sup.Ct. R. 11. We exercise our power to grant the writ sparingly and only where to do otherwise would result in substantial injustice. Laporte, 157 N.H. at 230, 950 A.2d 147. Certiorari review is limited to whether the trial court acted illegally with respect to jurisdiction, authority or observance of the law, or unsustainably exercised its discretion or acted arbitrarily, unreasonably, or capriciously. Id.
Here, we grant review because certiorari is the only avenue by which the State may seek relief from the order granting the parties complete access to K.H.'s medical and mental health records. See RSA 606:10 (2001) (specifying the circumstances in which the State may appeal to the supreme court in a criminal case).
The State argues that the records at issue are privileged and, thus, "the court was required to conduct an in camera review to determine whether there was an `essential need' for disclosure of the *816 records, and to release only those portions of the records that were relevant and responsive to the purpose for which the disclosure was ordered." We review a trial court's decision on the management of discovery and the admissibility of evidence under an unsustainable exercise of discretion standard. State v. Amirault, 149 N.H. 541, 543, 825 A.2d 1120 (2003). To meet this standard, the State must demonstrate that the trial court's ruling was clearly untenable or unreasonable to the prejudice of its case. See id.
Neither party disputes that the records the defendant seeks are subject to the physician-patient privilege and the psychotherapist-patient privilege. The most recent codification of the physician-patient privilege, RSA 329:26 (Supp.2010), states in pertinent part:
The confidential relations and communications between a physician or surgeon licensed under provisions of this chapter and the patient of such physician or surgeon are placed on the same basis as those provided by law between attorney and client, and, except as otherwise provided by law, no such physician or surgeon shall be required to disclose such privileged communications.
See N.H. R. Ev. 503(a). The psychotherapist-patient privilege is codified at RSA 330-A:32 (2004) and states in relevant part:
The confidential relations and communications between any person licensed under provisions of this chapter and such licensee's client are placed on the same basis as those provided by law between attorney and client, and nothing in this chapter shall be construed to require any such privileged communications to be disclosed, unless such disclosure is required by a court order.
See N.H. R. Ev. 503(b).
The purpose behind these privileges is to encourage full disclosure by the patient for the purpose of receiving complete medical and psychiatric treatment. State v. Kupchun, 117 N.H. 412, 415, 373 A.2d 1325 (1977) (discussing RSA 329:26 and RSA 330-A:19, former psychologist-patient privilege). The privileges recognize that much of what a physician learns from his patient may be both embarrassing and of little real consequence to society. Nelson v. Lewis, 130 N.H. 106, 109, 534 A.2d 720 (1987) (discussing the nature of the physician-patient privilege). With respect to the psychotherapist-patient privilege, we have found the public policy behind this privilege "may be even more compelling than that behind the usual physician-patient privilege." In the Matter of Berg & Berg, 152 N.H. 658, 664, 886 A.2d 980 (2005). "Many physical ailments might be treated with some degree of effectiveness by a doctor whom the patient did not trust, but a psychiatrist must have his patient's confidence or he cannot help him." Id. (quotation omitted). For these reasons, we have continually sought to safeguard the statutory protections afforded the confidential relationship between physicians and patients and therapists and patients. See In re Grand Jury Subpoena (Medical Records of Payne), 150 N.H. 436, 444, 448, 839 A.2d 837 (2004) (physician-patient privilege); Kupchun, 117 N.H. at 415, 373 A.2d 1325 (physician-patient privilege and former therapist-patient privilege).
Relying upon Desclos v. Southern New Hampshire Medical Center, 153 N.H. 607, 903 A.2d 952 (2006), the State argues that the trial court applied the wrong standard in determining whether to disclose the records at issue. Desclos involved a medical negligence action in which the plaintiff alleged that the defendant failed to recognize her symptoms of a spinal cord injury and, as a result, she suffered irreversible *817 quadriplegia. Desclos, 153 N.H. at 609, 903 A.2d 952. While Desclos involved civil litigation, neither RSA 329:26 nor RSA 330-A:32 contains any indication that the legislature intended to distinguish between civil and criminal matters. See State v. Elwell, 132 N.H. 599, 603, 567 A.2d 1002 (1989) (discussing former physician-patient privilege law), superseded in part on other grounds by RSA 329:26. Therefore, as we have in the past, we will follow our prior cases, despite their civil character. See id.
In Desclos, the defendants sought all of the plaintiff's psychiatric and psychological records prior to the date of her injury, arguing they were "relevant to her damage and liability claims." Desclos, 153 N.H. at 609, 903 A.2d 952. The trial court granted the defendants access to the records, ruling that the records were "clearly relevant to the issue of damages ... and are reasonably calculated to lead to the discovery of admissible evidence." Id. (quotation omitted). The trial court further ruled that "by the nature of the plaintiff's claim for loss of enjoyment of life and pain and suffering, she has waived the psychotherapist-patient privilege." Id. (quotation and brackets omitted).
The plaintiff brought an interlocutory appeal of the trial court's ruling, arguing that the court's order violated "the psychotherapist-patient privilege, and that she did not waive the privilege simply by claiming generic damages that are likely to arise from the injuries caused by the medical negligence alleged." Id. We found that the "trial court applied an incorrect standard for discovery of privileged material" as "[r]elevance alone is not the standard for determining whether or not privileged materials should be disclosed." Id. at 611, 903 A.2d 952.
Similarly, in this case, the trial court stated that it "assume[d] without having reviewed the records produced to date that portions of the records may well be relevant to the State and Defense since the victim's mental limitations, if any, are an element of the pending charge." This was error. See Desclos, 153 N.H. at 611, 903 A.2d 952; Super. Ct. R. 35(b)(1).
As we stated in Desclos, there are generally "two means by which disclosure of privileged information may occur: (1) the court finds a waiver of the privilege; or (2) the court orders a piercing of the privilege." Desclos, 153 N.H. at 611, 903 A.2d 952 (citation omitted). The State argues that in the absence of prior court review, neither of these means provided the court with the discretion to disclose all of the records at issue in this case. In contrast, the defendant contends that since he has already received certain discharge summaries related to K.H.'s stay at the New Hampshire Hospital and the records at issue are "actually required for resolution of the issue (i.e., whether the victim was mentally defective) any privilege should be considered impliedly waived or pierced as it pertains to these particular records." We address each argument in turn.

I. Implied Waiver
We have held that a party waives the privilege "by putting the confidential communications at issue by injecting the privileged material into the case." Id. at 612, 903 A.2d 952 (psychotherapist-patient privilege); Elwell, 132 N.H. at 607, 567 A.2d 1002 (physician-patient privilege). Indeed, in the civil context, "[t]here is broad agreement ... that the holder of a psychotherapist-patient privilege will impliedly waive the privilege by bringing a cause of action that requires use of the privileged material to prove the elements of the case." Desclos, 153 N.H. at 613, 903 A.2d 952 (emphasis added).
*818 The defendant urges us to "recognize that a similar implied waiver of [the] physician/psychotherapist-patient privilege applies in the criminal context, just as [we] ha[ve] recognized the implied waiver of the attorney-client privilege when a defendant claims ineffective assistance of counsel." The defendant's proposition is misplaced, however, because in civil or ineffective assistance of counsel cases, it is the holder of the privilege who puts otherwise privileged material at issue. See id. at 612-15, 903 A.2d 952 (medical negligence case); Petition of Dean, 142 N.H. 889, 890-91, 711 A.2d 257 (1998) (ineffective assistance of counsel case). We decline to hold that an alleged victim's medical records are put at issue simply because the State elects to proceed with a criminal prosecution. Cf. Elwell, 132 N.H. at 607, 567 A.2d 1002 (holding that "[a] criminal defendant does not put his medical condition at issue simply by proclaiming his innocence"). Were we to conclude that an alleged victim impliedly waives her privilege based upon the State's accusation against the defendant, we would effectively nullify the privilege. We do not believe the legislature intended such a result. Cf. id.

II. Piercing the Privilege
The defendant next argues that the records were properly ordered disclosed because the circumstances warranted piercing the privilege. We have found that "the privileges in question are not absolute and must yield when disclosure of the information concerned is considered essential." Kupchun, 117 N.H. at 415, 373 A.2d 1325. "To establish essential need, the party seeking the privileged records must prove both that the targeted information is unavailable from another source and that there is a compelling justification for its disclosure." In re Search Warrant (Med. Records of C.T.), 160 N.H. 214, 222, 999 A.2d 210 (2010) (quotation omitted). "Before establishing essential need for the information contained in the privileged records, however, the party seeking to pierce the privilege must first `establish a reasonable probability that the records contain information that is material and relevant to' the party's defense or claim." Desclos, 153 N.H. at 616, 903 A.2d 952 (quoting State v. Gagne, 136 N.H. 101, 105, 612 A.2d 899 (1992)). This initial showing of reasonable probability is necessary to protect both the victim's privacy interests in the confidential records and the defendant's due process interests in obtaining potentially exculpatory information. See id. The "reasonable probability" showing also establishes an initial, minimum standard that the defendant has to meet before the trial court undertakes an in camera review and a determination of whether the privilege should be abrogated. See id.
Here, the State does not dispute that the defendant has met this initial burden under Gagne. Therefore, the court was required to conduct an in camera review to determine whether the privileges at issue should be abrogated. Its failure to do so was error. Accordingly, we remand the case for the trial court to conduct an in camera review of the records to ascertain which, if any, of the records should be disclosed. See Gagne, 136 N.H. at 106, 612 A.2d 899.
Reversed and remanded.
DALIANIS, C.J., and DUGGAN, CONBOY and LYNN, JJ., concurred.