NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
No. 2015-0412


N.C.

v.

NEW HAMPSHIRE BOARD OF PSYCHOLOGISTS

NEW HAMPSHIRE BOARD OF PSYCHOLOGISTS

v.

ALETHEA E. YOUNG, PH.D.

Argued:  April 5, 2016
Opinion Issued:  September 20, 2016

Vitt & Associates, PLC, of Norwich, Vermont (Geoffrey J. Vitt, Sarah J. Merlo, and Jennifer B. Hartman, on the brief, and Mr. Vitt orally), and Law Office of Jason Crance, of Hanover (Jason R. Crance on the brief), for the appellants.

Joseph A. Foster, attorney general (Elizabeth A. Lahey, assistant attorney general, on the brief and orally), for the New Hampshire Board of Psychologists.

LYNN, J.  The appellants, N.C. and Alethea Young, Ph.D., appeal orders of the Superior Court (Smukler, J.) denying Dr. Young's motion to quash a subpoena for N.C.'s psychological records issued by the appellee, the New Hampshire Board of Psychologists (Board), and dismissing N.C.'s petition for a declaratory judgment to prevent the Board from obtaining the records.  We affirm.

I

The trial court found, or the record supports, the following facts.  Young is a licensed psychologist in the State of New Hampshire and maintains a practice in Lyme.  N.C. has been a patient of Young for many years, attending at least two therapy sessions per week since the age of two.  In August 2013, when N.C. was still a minor,[1] she informed Young that her father, S.C., had physically and emotionally abused her on August 8.  According to Young, throughout her treatment of N.C., she witnessed what she described as S.C.'s aggressive and humiliating treatment of his daughter, both in public as well as in therapy sessions.  Following the August 8 incident, S.C. and N.C. met with Young for a therapy session on August 9, during which everyone agreed that N.C. and S.C. should spend some time apart.  All parties agreed that N.C. would stay at Young's house and that the three would meet on Saturday, August 10.

Throughout the day on Saturday, Young and S.C. communicated via text message, and Young repeatedly requested that S.C. meet with her, either alone or with his daughter, to discuss the abuse that had occurred on August 8.  When S.C. tried to arrange to pick up his daughter later that day, Young stated that she needed to meet with him before N.C. could return home.  Later that night, Young and Dr. Karla Bourland, who was part of N.C.'s educational team, dropped N.C. off at a restaurant in Montpelier, Vermont, where she was picked up by her mother.  N.C. spent the night at her mother's house.  S.C. was not informed of his daughter's whereabouts until Sunday morning.

Young reported the incident that occurred on August 8 to the New Hampshire Department for Children, Youth and Families (DCYF) on August 13.  She admitted that despite her first-hand knowledge of S.C.'s abusive behavior, as well as her increasing concern for N.C.'s safety, she had previously declined to report the situation to DCYF because she believed that N.C. would have denied that the abuse took place in order to protect her father.

N.C.'s mother sought and received temporary physical custody of N.C., and S.C. was barred from seeing or contacting his daughter.  S.C. repeatedly requested that Young stop treating his daughter, but Young continued to do so, with court approval.

_____

[1] N.C. has since turned 18 years old and is no longer a minor.

In September, S.C. filed a written complaint against Young with the Board. The complaint alleged that Young had breached her professional obligations by: (1) becoming personally over-involved with N.C., thus sacrificing her objectivity; (2) providing counseling to both S.C. and his daughter, thus creating an insurmountable conflict of interest; (3) violating RSA 169-C:29 (2014) by failing to timely report suspected abuse of a child to DCYF; (4) violating RSA 633:1, I-a (2007) and 18 U.S.C. § 1201(a) (2012) by detaining and concealing N.C., who was a minor at the time, from S.C. when she drove N.C. to Vermont without S.C.'s knowledge or consent; and (5) failing to respect S.C.'s wishes that she no longer treat his daughter.

On October 3, Young submitted a written response to the Board. In it, she provided background information about N.C. and the history of her treatment, and also admitted that she told S.C. that she would not return N.C. to him until he agreed to meet with her. She also admitted that she learned of the abusive incident on August 8, but did not report it to DCYF until days later. Young stated that Bourland had dropped N.C. off in Vermont to meet her mother.

Based on S.C.'s complaint, the Board opened an investigation of Young. On November 7, the Board issued a subpoena duces tecum to Young requesting a complete set of records pertaining to N.C. When Young notified N.C. of the subpoena, N.C. instructed Young to assert the psychologist-patient privilege and object to production of the records. Young moved to quash the subpoena, but the Board denied her motion and ordered her to produce the records. N.C., through her mother, sought declaratory relief in the superior court to prohibit the Board from obtaining the records on the basis of the psychologist-patient privilege; the Board moved to dismiss the claim. The Board also filed a petition in superior court for an order compelling Young to produce the records, and Young moved to quash the subpoena.

In the trial court, the appellants argued that the Board must show just cause to issue a subpoena for privileged records and must obtain a court order to overcome N.C.'s assertion of privilege. The Board asserted that, because it was conducting a formal investigation, it did not need to make any threshold showing in order to subpoena records.

The trial court found that, under RSA 329-B:22 (Supp. 2015), the Board was authorized to subpoena psychological records at any time, but that it must have just cause to do so, even when a subpoena is issued in the course of a formal investigation. The trial court found that, in this case, the Board had sustained that burden because Young was charged with misconduct by formal complaint, the Board is charged with regulating the practice of psychology and has the statutory power to investigate such a complaint, and the privileged records sought were relevant to that investigation. The court granted the Board's motion to dismiss N.C.'s petition for declaratory relief. Applying its

3

ruling to the Board's motion to compel, the court denied Young's motion to quash and ordered compliance with the Board's subpoena. The appellants appeal both orders.

II

On appeal, the appellants argue that the trial court erred in enforcing the subpoena because the Board failed to establish that it had just cause to issue the subpoena. The appellants also contend that, even if just cause existed to issue the subpoena, once they objected, the subpoena could not be enforced by the court because the Board failed to sustain what, in their view, is the additional burden necessary to pierce the patient's privilege by showing that there was a reasonable probability the records were relevant and material and that the Board had an essential need for them. Finally, the appellants assert that, even if the Board met the burden necessary to pierce the privilege, the court erred in not conducting an in camera review of the records before ordering compliance with the subpoena in order to limit the scope of disclosure.

The parties disagree about what the Board is required to do to obtain privileged records by subpoena. The appellants argue that the Board must engage in a two-step process: first, the Board must establish just cause to issue a subpoena; second, it must obtain a court order compelling compliance with the subpoena. To obtain such an order here, the appellants argue, the Board must establish a sufficient basis for the court to pierce the patient's privilege, which means meeting the standard articulated in cases such as Desclos v. Southern New Hampshire Medical Center, 153 N.H. 607, 616-17 (2006). The Board argues that it need not obtain a court order before accessing privileged records; it need only establish just cause.

Resolution of this issue requires us to interpret RSA chapter 329-B (Supp. 2015). We review the trial court's statutory interpretation de novo. Olson v. Town of Grafton, 168 N.H. 563, 566 (2016). In matters of statutory interpretation, we are the final arbiter of the legislature's intent as expressed in the words of the statute considered as a whole. Appeal of THI of NH at Derry, LLC, 168 N.H. 504, 508 (2016). We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. Id. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. Id. We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result. Id. Moreover, we do not consider words and phrases in isolation, but rather within the context of the statute as a whole. Id. at 508-09. This enables us to better discern the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme. Id. at 509. When the language of a statute is plain and

4

unambiguous, we need not look beyond the statute itself for further indications of legislative intent.  Id.  We also presume that the legislature does not waste words or enact redundant provisions and, whenever possible, we give effect to every word of a statute.  In re Search Warrant (Med. Records of C.T.), 160 N.H. 214, 221 (2010).

RSA chapter 329-B was enacted "to regulate the practice of psychology by practitioners in New Hampshire to assure that the services provided are of a quality consistent with the standard of care within the profession, and to safeguard the public against harm which may be caused by untrained, unskilled, or unlicensed practitioners."  RSA 329-B:1.  To this end, the Board "may, for just cause, undertake an investigation or disciplinary proceedings" concerning practitioners licensed under the chapter.  RSA 329-B:21, I.  One way that an investigation may be initiated is "[u]pon written complaint which charges that a person licensed under this chapter has committed misconduct." RSA 329-B:21, I(c).  The Board "may administer oaths or affirmations, preserve testimony, and issue subpoenas for witnesses and for documents and objects only in a formal investigation or an adjudicatory hearing, except that subpoenas for psychological records as provided in paragraph VI may be issued at any time."  RSA 329-B:22, V(a).  Under paragraph VI, the Board "may, with just cause, at any time subpoena psychological records from its licensees and from hospitals and other health care providers licensed in this state."  RSA 329-B:22, VI.

The Board argues that the plain language of RSA 329-B:22 allows it to issue subpoenas for records at any time, provided that it has just cause to do so, and does not require the Board to take the additional step of obtaining a court order to compel compliance with the subpoena.  The appellants argue that this section must yield to another section, RSA 329-B:26, which provides, in part:

> The confidential relations and communications between any person licensed under provisions of this chapter and such licensee's client or patient are placed on the same basis as those provided by law between attorney and client, and nothing in this chapter shall be construed to require any such privileged communications to be disclosed, unless such disclosure is required by a court order.

Further, RSA 329-B:2, V defines "[p]rivilege" as "the right of a patient for privacy of his or her psychological records, which belong to the patient and which shall not be abridged except by court order or other exception under state or federal law."  (Quotation omitted.)

Although the Board contends that RSA 329-B:22 is such "an exception under state or federal law" provided for by RSA 329-B:2, V, the appellants

5

respond that it cannot be because RSA 329-B:26 clearly states that "nothing in this chapter shall be construed to require any such privileged communications to be disclosed, unless such disclosure is required by a court order."  RSA 329-B:26 (emphasis added).  When the sections are read together, the appellants argue, the statute requires the Board to obtain a court order to compel disclosure of privileged records.  The appellants also note that, although other statutes that govern the regulation of health professions involving confidential relationships provide explicit exceptions to the privilege for investigations conducted by the regulatory board, RSA 329-B:26 does not.  Compare RSA 329-B:26 with RSA 329:26 (2011) (physicians and surgeons); RSA 326-B:35 (2011) (nurses); RSA 328-F:28 (2011) (allied health professionals); and RSA 316-A:27 (2015) (chiropractors).[2]

The appellants further argue that, because RSA 329-B:22 and :26 do not create an exception, and because there is no claim that N.C. waived her privilege, the court may issue such an order only by piercing N.C.'s privilege.  See Desclos, 153 N.H. at 611 ("Generally, there are two means by which disclosure of privileged information may occur: (1) the court finds a waiver of the privilege; or (2) the court orders a piercing of the privilege." (citations omitted)).  To pierce the privilege, the appellants assert, the Board must meet the standard that we have articulated in past cases in which a third party sought to obtain confidential records over a patient's objection — that is, the Board must show: (1) there is a reasonable probability that the requested records are relevant and material; and (2) the Board has an essential need for the records.  See id. at 615-17; Petition of State of N.H. (State v. MacDonald), 162 N.H. 64, 70 (2011).  The appellants assert that requiring the Board to show just cause as well as what, in their view, is the higher standard needed to pierce a patient's privilege is proper given the particular importance of confidentiality in relationships between patients and psychologists.  See In the Matter of Berg & Berg, 152 N.H. 658, 664-65 (2005); see also Jaffee v. Redmond, 518 U.S. 1, 10 (1996).

The Board argues that requiring it to demonstrate essential need would add language to the statute because, by its plain terms, the only requirement that RSA 329-B:22, VI imposes upon the Board is that it have just cause to issue a subpoena for psychological records.  The Board contends that the appellants' interpretation is illogical because requiring a court order authorizing the issuance of subpoenas would render meaningless RSA 329-

---

[2] The appellants may be correct in asserting that the absence of such an exception demonstrates that the legislature viewed confidentiality in the psychologist-patient relationship as deserving of greater protection than applicable to other professional relationships in the health care field.  However, this does not change the fact that RSA chapter 329-B plainly permits the Board to issue a subpoena for privileged records when it has just cause to do so.  Indeed, the just cause prerequisite arguably can itself be viewed as recognizing the heightened importance of confidentiality in the psychologist-patient relationship, since other statutes contain no such requirement, see, e.g., RSA 329:18, IV(a) (2011); RSA 326-B:38 (Supp. 2015).

B:22, V and VI, which grant the Board subpoena power, and would impede the Board's ability to conduct investigations. The Board also contends that the essential need standard is not necessary to protect the psychologist-patient privilege because the relationship is adequately protected by the just cause requirement of RSA 329-B:22, VI.

We agree with the appellants that the statute requires a court order to obtain a patient's records when there is an objection to compliance with a subpoena based upon a claim of privilege. Given the plain language of RSA 329-B:26 that "nothing in this chapter shall be construed to require any such privileged communications to be disclosed, unless such disclosure is required by a court order," the just cause requirement in RSA 329-B:22, VI cannot be an exception to the patient's privilege provided for by RSA 329-B:2, V. To adopt the Board's position would require us to ignore the language of RSA 329-B:26, which we decline to do. See State Employees Assoc. of N.H. v. N.H. Div. of Personnel, 158 N.H. 338, 345 (2009) (noting the "elementary principle of statutory construction that all of the words of a statute must be given effect and that the legislature is presumed not to have used superfluous or redundant words" (quotation omitted)).

RSA 329-B:22 and :26 can be read together, without conflict. The Board may issue a subpoena for psychological records at any time, provided that it has just cause. However, when a privilege-based objection is made to the subpoena, the Board must seek a court order to compel compliance.[3] When determining whether to compel compliance with the subpoena, the court must review the Board's determination that just cause exists to issue it.

We disagree with the Board's contention that requiring a court order renders RSA 329-B:22 meaningless. RSA 329-B:22 establishes the standard — just cause — that must be satisfied in order for the Board to access psychological records, and it is the standard that must be utilized both by the Board, in issuing a subpoena for such records, and by the court, in enforcing a subpoena for the records. In the absence of the just cause standard set forth in RSA 329-B:22, VI, the statute would lack a criterion by which courts are to determine whether a subpoena should be enforced. Thus, RSA 329-B:22 serves a useful purpose, notwithstanding that subpoenas for psychological records are not self-executing. Requiring a court order also does not impede investigations because the same showing required of the Board to issue a subpoena under RSA 329-B:22 — just cause — is required for the court to enforce the subpoena.

We find it unnecessary to address the appellants' contention that, for a court to enforce a subpoena for psychological records issued by the Board, the

---

[3] Such an order can take the form of a court's ruling on a patient's or psychologist's motion to quash, or on a petition for declaratory judgment, both of which were utilized in this case.

Board must demonstrate, either as part of its showing of just cause or as an additional requirement above and beyond just cause, that: (1) there is a reasonable probability the subpoenaed records contain material and relevant information; and (2) it has an essential need for the records. Desclos, 153 N.H. at 615-17. Even if we assume, without deciding, that this standard applies to a subpoena issued by the body charged with regulating a licensee, as opposed to a disclosure sought by another third party, as was the case in Desclos, see id. at 609, we conclude that the Board met the standard in this case.

The Board received a written complaint from S.C. alleging a number of instances of serious misconduct by Young. See RSA 329-B:21, I(c). The appellants contend that the Board did not verify the accuracy or credibility of the complaint, and that S.C. had an improper motive in filing the complaint. The Board had more than S.C.'s complaint, however. Young submitted a written response and her answers corroborated much of the complaint. This clearly provided the Board with just cause to launch an investigation. Furthermore, the very fact that the allegations pertained to Young's professional interactions with N.C. and S.C. during the course of her treatment of the two provided ample justification for concluding that the records of such treatment would likely contain relevant and material information. Additionally, due to the nature of the misconduct alleged — including particularly that Young had become over-involved with N.C. and had a conflict of interest arising from her treatment of both N.C. and S.C. — and the private nature of the psychologist-patient relationship, it is readily apparent that the Board had an essential need for the information contained in the subpoenaed records, and that such information would not be available from alternative sources. In sum, we conclude that the trial court did not err in finding that there was a proper basis for enforcing the Board's subpoena.

The Board subpoenaed all of N.C.'s records for the length of her relationship with Young. The appellants contend that the subpoena was overbroad and that the Board was required to establish probable relevance and essential need as to the entirety of the records that it sought. The appellants suggest that only the records involving Young's professional services rendered around the time of the incident in August 2013 should be disclosed. However, unlike in Desclos and other cases in which privileged records were sought by a third party because of their relevance to some discrete matter or issue collateral to the professional-patient relationship, here, the purpose of the disclosure was to investigate the nature of that relationship itself to determine whether Young deviated from accepted standards of professional conduct. Compare, e.g., Desclos, 153 N.H. at 609 (defendants in medical negligence claim sought patient's psychological records created prior to the injury, arguing that they were relevant to the issue of damages); Petition of State of N.H., 162 N.H. at 65-66 (criminal defendant sought sexual assault victim's medical and mental health records that were relevant to victim's mental capacity, which was an element of the crime); In re Grand Jury Subpoena (Medical Records of

Payne), 150 N.H. 436, 438 (2004) (State sought defendants' medical records to establish an element of felony aggravated driving while intoxicated). The Board could reasonably have determined that, in order to properly investigate Young, it needed to consider the entire course of Young's professional relationship with N.C. and S.C. Accordingly, because there was a proper basis for the court to conclude that all of the records are relevant and necessary to the Board's investigation, the court did not need to conduct an in camera review to determine which records should be produced to the Board.

We continue to recognize and respect the importance of the psychologist-patient privilege, see In the Matter of Berg, 152 N.H. at 664-65, and nothing in this decision diminishes that importance. However, we conclude that the trial court did not err in finding that, under the circumstances of this case, the privilege must yield to the Board's proper exercise of its regulatory responsibilities with regard to its licensee, Dr. Young.

Affirmed.

DALIANIS, C.J., and HICKS, CONBOY, and BASSETT, JJ., concurred.