NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
Case No. 2023-0210
Citation: State v. Doyle, 2024 N.H. 25

THE STATE OF NEW HAMPSHIRE

v.

JOHN DOYLE

Argued: October 12, 2023
Opinion Issued: May 14, 2024

John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Michael R. Grandy, assistant attorney general, on the brief and orally), for the State.

Thomas Barnard, deputy chief appellate defender, of Concord, on the brief and orally, for the defendant.

MACDONALD, C.J.

[¶1] The defendant, John Doyle, appeals an order of the Superior Court (Tucker, J.) granting the State's motion to allow the Office of the Forensic Examiner (OFE) to release his medical and mental health records to a

physician designated by the State for the purpose of assessing the appropriateness of involuntary commitment under RSA 135:17-a, V (2021). The defendant argues that the court erred by ruling that his records are exempt from the physician-patient and psychotherapist-patient privileges. See RSA 329:26 (2017); RSA 330-A:32 (Supp. 2022). We vacate and remand.

## I. Background

[¶2] The following facts were found by the trial court or are otherwise supported by the record. In March 2019, the defendant was charged with crimes arising out of a domestic dispute. See RSA 631:4 (2016); RSA 631:2-b, I(a) (2016 & Supp. 2023). In August 2019, the trial court ordered the defendant to undergo a competency evaluation, prompted by a motion from defense counsel. In doing so, the court also ordered that defendant's counsel provide the OFE with certain mental health and medical records. The order specified that "[t]he contents of the records produced shall be used only to determine competency and may not be used in any other proceeding, or further disclosed, without order of the Court."

[¶3] In its competency report, the OFE indicated that it had requested the defendant's mental health records but they had not been received as of the time the report was written and, therefore, formed no basis for the conclusions reached in the report. Nevertheless, the OFE evaluator concluded that the defendant was not competent to stand trial but "can be restored to competence in the next 12 months, with appropriate treatment." (Emphasis omitted.) In September 2019, the trial court found that the defendant was not competent to stand trial. Defendant's counsel requested an independent examiner to conduct an evaluation related to his competence to stand trial and capacity for restoration. That expert concluded that the defendant was unlikely to be restored to competency. In making this determination, the defendant's expert, in addition to interviewing and evaluating the defendant, reviewed medical and mental health records provided by the defendant. Following a hearing, the trial court ordered that the defendant undergo treatment to be restored to competency.

[¶4] In August 2021, the OFE re-evaluated the defendant and concluded that he had not been restored to competency and that he was dangerous to himself or others. The OFE's report indicates that this evaluation included reviewing certain of the defendant's mental health records. Following a hearing on restorability, the trial court found that the defendant had not regained competency. Following a further hearing, the court found in February 2022 that the defendant was dangerous to others and ordered that he "shall be evaluated for the appropriateness of involuntary treatment as described in RSA 135:17-a, V."

2

[¶5] Thereafter, the State sought an order from the trial court to allow the release of the defendant's records — which had been "relied upon" by the OFE "to form their opinion" as to his competency to stand trial and dangerousness — to the doctor designated by the State to evaluate the defendant for purposes of involuntary commitment. The trial court granted the State's request. The defendant moved for reconsideration, asserting that the records ordered to be released are confidential and privileged and should therefore not be disclosed "to a third party without his consent." See RSA 329:26; RSA 330-A:32.

[¶6] The trial court denied the defendant's motion, determining that "the medical and mental health records provided to the forensic examiner are exempt from the statutory privileges." The trial court reasoned that, "[w]hether it leads to a petition or not, RSA 135:17-a, V provides a mechanism for initiating the civil commitment process." Therefore, the court concluded, the examination falls within the privilege statutes' exceptions for proceedings under RSA 135-C:24-:54. The court further observed that, "[i]n the context of this case, it would make little sense for the mental health professional conducting the evaluation to be without evidence of the medical records that were available to the court in the criminal case and prompted the order for a further evaluation."

[¶7] This appeal followed. The trial court subsequently granted the defendant's motion to stay the order authorizing the disclosure of his records pending this appeal.

## II. Analysis

[¶8] On appeal, the defendant challenges the trial court's determination that RSA 329:26 and RSA 330-A:32 allow for the transfer of his medical and mental health records relied upon by the OFE to the State's designated evaluator under RSA 135:17-a, V. The State counters that: (1) RSA 135:17-a, V authorizes the trial court to order the transfer of those records; (2) the defendant waived the privileges with respect to those records; and (3) the State established essential need for those records before the trial court.

[¶9] Resolving this appeal requires us to engage in statutory interpretation. St. Onge v. Oberten, LLC, 174 N.H. 393, 395 (2021). We review the trial court's statutory interpretation de novo. Id. We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. Id. We give effect to every word of a statute whenever possible and will not consider what the legislature might have said or add language that the legislature did not see fit to include. Id. We also construe all parts of a statute together to effectuate its overall purpose. Id. However, we do not construe statutes in isolation; instead, we attempt to construe them in harmony with the overall statutory scheme. Id.

3

[¶10] At issue in this case are the physician-patient privilege, see RSA 329:26, and the psychotherapist-patient privilege, see RSA 330-A:32. Under these privilege statutes, "[t]he confidential relations and communications between" physicians and psychotherapists and their patients "are placed on the same basis as those provided by law between attorney and client." RSA 329:26; RSA 330-A:32. RSA 329:26 specifies that "except as otherwise provided by law, no such physician or surgeon shall be required to disclose such privileged communications." RSA 329:26. RSA 330-A:32 states, in pertinent part, that "nothing in this chapter shall be construed to require any such privileged communications to be disclosed, unless such disclosure is required by a court order." RSA 330-A:32.

[¶11] The purpose behind these privileges is to encourage full disclosure by the patient for the purpose of receiving complete medical and psychiatric treatment. Petition of State of N.H. (State v. MacDonald), 162 N.H. 64, 67 (2011). The privileges recognize that much of what physicians learn from their patients may be both embarrassing and of little real consequence to society. Id. With respect to the psychotherapist-patient privilege, we have found the public policy behind this privilege might be even more compelling than that behind the usual physician-patient privilege. Id. at 68. Many physical ailments may be treated with some degree of effectiveness by a doctor whom the patient does not trust, but a psychiatrist must have the patient's confidence or the psychiatrist cannot help the patient. Id. For these reasons, we have continually sought to safeguard the statutory protections afforded the confidential relationship between physicians and patients and therapists and patients. Id.; see Nelson v. Lewis, 130 N.H. 106, 109 (1987) (explaining that the physician-patient privilege belongs to the patient, "who may prevent the physician from revealing statements whose confidentiality the patient wishes to preserve").

[¶12] RSA 135:17-a sets forth procedures for a trial court to follow after making an initial determination that a defendant is not competent to stand trial. State v. Salimullah, 172 N.H. 739, 743 (2020). RSA 135:17-a, V provides that when a defendant is found not competent, not restored, and "dangerous to himself or herself or others, the court shall order the person to remain in custody for a reasonable period of time, not to exceed 90 days, to be evaluated for the appropriateness of involuntary treatment pursuant to RSA 135-C:34 or RSA 171-B:2." RSA 135:17-a, V. "The court may order the person to submit to examinations by a physician, psychiatrist, or psychologist designated by the state for the purpose of evaluating appropriateness and completing the certificate for involuntary admission into the state mental health services system, the state developmental services delivery system, or the secure psychiatric unit, as the case may be." Id.

[¶13] It is well settled that statutory privileges should be strictly construed. State v. Willis, 165 N.H. 206, 212 (2013). Both RSA 329:26 and

4

RSA 330-A:32 provide that they "shall not apply" to "hearings conducted pursuant to RSA 135-C:27-54." (Emphasis added.) However, neither the plain language of RSA 329:26 nor of RSA 330-A:32 exempts an evaluation conducted pursuant to RSA 135:17-a, V from the protections afforded to the privileged communications at issue in this case. Nor does the plain language of RSA 135:17-a authorize the disclosure of such communications for the purpose of the court-ordered evaluation under section V. We conclude, therefore, that in accordance with RSA 329:26 and RSA 330-A:32, the defendant's medical and mental health records are privileged. Therefore, the trial court erred as a matter of law in determining that, pursuant to RSA 135:17-a, V, "the [defendant's] medical and mental health records provided to the forensic examiner are exempt from the statutory privileges." See St. Onge, 174 N.H. at 395 (we will not consider what the legislature might have said or add language that the legislature did not see fit to include). Although we are bound to apply the statute as written, the legislature is, of course, free to amend the statutory scheme should it disagree with the conclusion that we reach today. See Brady v. Sumski, Chapter 13 Tr., 176 N.H. 165, 175 (2023).

[¶14] Likewise, we reject the State's assertion that "[a]n order to produce medical records under RSA 135:17-a, V . . . meets the exception contained in RSA 330-A:32 permitting disclosure" if "required by court order." (Quotation omitted.) See RSA 330-A:32. There are generally two grounds upon which privileged information may be disclosed: (1) the court finds a waiver of the privilege; or (2) the court orders a piercing of the privilege because disclosure of the information concerned is considered "essential." See Petition of State of N.H., 162 N.H. at 69-70. Because the trial court erroneously concluded that RSA 135:17-a, V exempts the records at issue from the statutory privileges, it did not address whether either of the grounds for disclosing privileged information could be met here. Accordingly, we remand to the trial court for further proceedings and, in doing so, we express no view on the merits. We have reviewed the parties' remaining arguments and determine that they lack merit and do not warrant further discussion. See Vogel v. Vogel, 137 N.H. 321, 322 (1993).

Vacated and remanded.

BASSETT and DONOVAN, JJ., concurred; HANTZ MARCONI, J., sat for oral argument but subsequently disqualified herself and did not participate in further review of the case.